## Court of Appeals.

October 29, 1904.

## PEOPLE v. WILLIAM H. ENNIS.

(176 N. Y. 289.)

1. MURDER—EVIDENCE TO SUSTAIN VERDICT OF—INSANITY.
   The evidence upon the trial of an indictment for murder reviewed and held sufficient to sustain a verdict convicting defendant of murder in the first degree, where the question of defendant's sanity was one for the jury.

2. SAME—APPEAL.
   The power conferred upon the Court of Appeals in the review of capital cases is not called into exercise by the appearance of some error which no exception pointed out, and which cannot be seen to have affected the substantial rights of the accused.

APPEAL from a judgment of the Kings County Court, rendered at a Trial Term May 22, 1902, upon a verdict convicting the defendant of the crime of murder in the first degree. The facts, so far as material, are stated in the opinion.

John P. Kelly, John T. Norton and J. Grattan McMahon, for appellant.

John F. Clarke, District Attorney (Robert H. Roy, of counsel), for respondent.

Per CURIAM: The defendant was indicted for the murder of his wife, and, being tried upon the charge, was found guilty by a jury of murder in the first degree. The killing is not denied and the evidence upon the trial showed that the crime was committed under circumstances of peculiar atrocity. These facts appeared. About a year after the marriage of the defendant with the deceased, and after the birth of their child, in September, 1901, the latter left her husband, went to

her mother's residence and dwelt with her thereafter. She then commenced an action for separation upon the ground of cruel and inhuman treatment. A judgment was rendered in her favor by default, which awarded her alimony. A few minutes before 7 o'clock, on the morning of the 14th day of January, 1902, the defendant entered the residence of his mother-in-law, went to her room, and, while she was in bed with his infant child, applying a foul epithet to her, he shot her in the breast with a revolver. He then said that he was going to shoot his wife and, turning from the bed, met the latter coming from the adjoining room. He told her that he was going to shoot her; struck her, threw her down upon the floor, and, disregarding her entreaties not to shoot her, or that she might first be allowed to go to confession, shot her, also, in the breast, with the result of causing immediate death. One of her sisters, who had taken up the child from the bed and held it in front of the defendant, in an effort to prevent the shooting, was threatened herself with death if she did not get out of the way. He then left the house, went to a hotel and was there arrested, while asleep in bed. He stated to the officers who arrested him that he knew what he had done and was willing to suffer for it, and he expressed his regret that he had not killed his mother-in-law. He subsequently volunteered similar statements when confronted with his mother-in-law in the hospital. The only defense which was relied upon at the trial was that of insanity. Upon that issue testimony was given in his behalf by relatives, friends, associates and medical experts; from which it was made to appear that, when a lad, he had received injuries in his head from a fall; that thereafter, and in later life, he showed symptoms of being afflicted with the disease of epilepsy, manifesting itself at times in convulsions, and that he had delusions inducing acts of violence. According to the evidence of the various lay and expert witnesses who

testified in his behalf, whether from observation or from examination, they believed him to be of unsound mind and to be a paranoiac. As against the evidence thus adduced upon the question of the defendant's sanity, the People introduced other evidence, in the testimony of medical practitioners and experts, who had capacity to speak, either from acquaintance with or examination of the defendant, and in that of various lay witnesses who were acquainted or associated with him. According to the evidence of the latter class of witnesses, he had been rational in his conduct for several years prior to the date of the occurrences in question, though a hard drinker, and they had observed none of the usual epileptic manifestations, while, according to the former class, he was, in their opinion, not an epileptic and was merely shamming. In addition to the evidence directed towards showing the sanity or insanity of the defendant, the jurors had before them the evidence of his conduct prior to and immediately following the killing, from which they were warranted in concluding that he was perfectly rational and not acting under the influence of any delusion or maniacal attack. Upon the rendition of the judgment of separation and for alimony, he openly declared in court that he would " rot in jail before he would give a cent." Shortly before the killing he had declared his purpose to kill his wife in a letter and in conversation. In the evening of the day before he was in a liquor saloon and cashed a check which he had received from the sale of the furniture in his residence. Later in the evening, and until nearly 1 o'clock in the morning, he was drinking in another saloon, and in conversation with the proprietor of the saloon invited him to have the last drink he would ever have with him; talked about his mother-in-law and said he would put a bullet in her, as she had made all the trouble between him and his wife. He then went to another barroom, where he exchanged some of his money for the check of the proprietor, payable to the order of his sister. He next appeared in the

residence of his mother-in-law, where, under the circumstances already narrated, he deliberately shot her and then his wife; the testimony as to those occurrences being given by his mother-in-law and the two sisters of his wife, who were present. From their testimony it was evident that his conduct in the room was that of a man intending, in cold blood, to commit murder, and comprehending fully what he was doing and was about to do. Whether, upon a consideration of all the evidence adduced, the defendant was laboring under a defect of reason or was the subject of an epileptic attack, was a question for the determination of the jurors as a disputed question of fact. Their verdict is conclusive upon us and we do not see how they could have well reached any other determination upon the case than they did.

The defendant does not present to us any exception taken upon the trial, upon which error is predicated as warranting the reversal of the judgment of conviction. He appeals to our power to order a new trial, in the absence of any exceptions, upon the ground that a review of the record shows that justice demands it. We have reviewed the record. We are satisfied that the evidence well supported the verdict of the jury; that it abundantly established the guilt and the responsibility of the defendant, and that his substantial rights have not been prejudicially affected. The power conferred upon this court in the review of capital cases is not called into exercise by the appearance of some error, which no exception pointed out and which cannot be seen to have affected the substantial rights of the accused. The demands of justice have been satisfied in the trial which has been had and, upon the whole case, we reach the conclusion that no sufficient grounds have been presented and none exists to justify a reversal of the judgment of conviction.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment of conviction affirmed.