## SUPREME COURT—APPELLATE DIVISION— FOURTH DEPARTMENT.

### July 6, 1920.

## THE PEOPLE v. HARVEY H. BROWN.

### (193 App. Div. 203.)

(1) RIOT—ATTACK UPON STRIKE BREAKERS—PENAL LAW, SECTION 2090—EVIDENCE JUSTIFYING CONVICTION.

Appeal from a judgment convicting the defendant of the crime of riot as defined by section 2090 of the Penal Law, which riot took place during a strike of the employees of an electric railroad and involved attacks upon "strike-breakers" used to operate the cars. Evidence examined, and *held*, that a riot had occurred without question, and that a finding by the jury that the defendant had participated in the crime was justified.

(2) SAME—WHEN DEFENDANT NOT PREJUDICED BY PUBLICATION OF CHARGE TO GRAND JURY IN NEWSPAPER.

· Conviction of said crime will not be set aside on appeal merely because the charge previously made by the presiding judge to the grand jury, which found the indictment, was published in a newspaper having a circulation in the vicinity. Such publication did not deprive defendant of such trial as is guaranteed by the Constitution, although it seems such publication might·be made the basis of a motion to change the place of trial.

(3) SAME.

Said conviction will not be reversed because the trial judge stated to the grand jury when the indictment was found that it was a matter of public knowledge that a riot occurred a few weeks ago, as such statement did not deprive the grand jury of its right to determine whether the crime of riot had been committed, acting as judge both of the law and the facts.

(4) SAME.

Moreover, even if the statement of the judge that a riot had occurred were erroneous, it is not ground for reversal, as it is presumed that the grand jury performed the duty of receiving none but legal evidence, enjoined upon them by section 256 of the Code of Criminal Procedure, which is required to be read to them.

(5) SAME—FAIR AND IMPARTIAL TRIAL.

Assuming that it was error for the trial judge to refuse to instruct the jury after verdict as to different degrees of the crime of riot and to instruct them that the defendant may be convicted of any lesser degree,

said error is not a ground for reversal, where, in fact, the defendant was sentenced for the lesser degree, for he was not harmed by the court's refusal to charge.

(6) SAME—NO DECREES OF CRIME OF RIOT—SECTION 2091.

However, the crime of riot is not divided into degrees by section 2091 of the Penal Law, which simply classifies the punishment into three groups depending upon the character of the acts constituting the crime.

(7) SAME—PUNISHMENT FOR CRIME—FELONY.

As the trial court under said section is permitted to send a defendant to a State prison regardless of which of the three subdivisions is applied on the facts proven in fixing sentence, riot is necessarily a felony in all such cases.

(8) SAME—THAT SAME JUDGE CHARGED GRAND JURY AND TRIED CASE NO CAUSE FOR REVERSAL.

Said conviction will not be reversed upon the theory that the defendant was denied a fair and impartial trial owing to the fact that the trial judge was the same person who instructed the grand jury which found the indictment.

(9) SAME—JUDGE CANNOT BE SHOWN BIASED BY AFFIDAVITS OF JURYMEN— NO JUSTIFICATION FOR RIOT.

The fact that the judge who presided at the trial was actually biased cannot be established by the affidavits of jurymen which are inadmissible to impeach the verdict rendered.

The crime of riot cannot be justified.

(10) SAME—WHEN PLEA OF GUILTY TO LESSER CRIME BY OTHER DEFENDANTS JOINTLY INDICTED, NO GROUND FOR REVERSAL OF CONVICTION.

The judgment of conviction will not be reversed because pending the trial two persons jointly indicted with the defendant pleaded guilty to the lesser crime of "unlawful assembling," if their plea was accepted in the absence of the jury, although it may have subsequently reached their knowledge, especially where the course followed was acquiesced in by the defendant's counsel.

APPEAL by the defendant, Harvey A. Brown, from a judgment of the Supreme Court, Cattaraugus county, rendered against him on the 28th day of November, 1919, convicting him of the crime of riot.

*Dana L. Jewell,* for the appellant.

*Archibald M. Laidlaw, District Attorney,* for the respondent.

LAMBERT, J.:

The defendant Brown and some seventeen other persons were indicted for the crime of riot as defined by section 2090 of the Penal Law. The defendant was given a separate trial and has been convicted and sentenced to a penal institution for the period of eight months. Upon the verdict of conviction and the proceedings had a judgment has been entered. A motion for a new trial was made upon all the grounds specified in section 465 of the Code of Criminal Procedure, except subdivision 7, which motion was denied. The formal order granted, if any, denying the motion is not recited or printed in the record. The appeal is from the judgment of conviction.

The ultimate and controlling facts on the merits are not in dispute. The Western New York and Pennsylvania Traction Company operated an interurban surface electric road in and leading from surrounding territory into the city of Olean. In August, 1919, its employees were on a strike. The company brought to the city of Olean so-called " strike-breakers " to operate its cars. It housed them in its car barn located at the junction of two of the principal streets of the city. The barn was two hundred and fifty by eighty feet and cut into rooms for convenient use. Five tracks entered the barn on the east end and four on the west end. The openings through which the cars entered could be closed or cleared for car movement by steel doors eleven feet wide which rolled up. There were four steel doors on the west end and five on the east end.

Before and especially in the late afternoon of August 18, 1919, attempt was made to run cars, which was prevented by violent resistance of people upon the streets. The operators left the cars on the street and returned to the car barn, and took refuge therein from threatened and actual assault. At this time there were from 50 to 100 people on the street and in the vicinity of the car barn. Stones were thrown and hurled at the barn by the people outside and likewise by the people on the inside of the barn at the people upon the street.

A shot was fired by one of the so-called strike-breakers, wounding one of the throng of people on the street. Soon thereafter the sheriff and his deputies arrived upon the scene, entered the car barn and placed under arrest one Brannigan, the person alleged to have fired the shot. At this time the crowd in the street, coming from all directions, had increased to several hundred. Stones were hurled at the car barn, the crowd yelling to the officers: " Bring him out, bring him out and we will take care of him. Give him to us."

There were at this time in the car barn two officers and about thirty-five to forty men. During the disturbance, two sons of the president of the traction company, by his direction, got and brought into the car barn three shot guns and ammunition therefor. Firing soon ensued and at least one person outside the barn was seriously wounded and others received minor injuries. Stones were being thrown against both the east and west walls of the barn and ties or rails were used as battering rams against the steel doors on the west end of the building. Men from the crowd mounted the car barn by means of ladders, hurled bolts and other missiles through the skylight of the building, inflicting injury upon the people inside. One or more shots were fired into the building from the roof of the barn. The men on the inside fired upon the crowd through the small door in the northeast corner of the building and then barricaded the door. The steel doors were lifted up, while the men on the inside forced the doors down. The steel doors were again forced up and the men on the inside fired at the feet of the men engaged in raising the doors.

During this period a large amount of glass was falling from the skylight in large and heavy chunks, inflicting injuries upon the men inside. Brannigan, who was under arrest, was injured and in the excitement of the occasion disappeared and was not thereafter apprehended. There were 72 panes of glass broken in the skylight and 140 in the barn proper. The throng forced an entrance to the barn and threw out canned tomatoes, sar-

dines, peaches, apricots, etc., some of which were afterwards thrown through the skylight upon the men in the mess hall.

Through the efforts of one Conroy, a labor organizer, and one Griffith, president of the Trades and Labor Council, at about nine o'clock P. M. the crowd consented that the strike-breakers be taken peaceably from the building and sent out of town on the evening train. The crowd gathered rapidly and was variously estimated at between 4000 and 7000 people. During the evening one Ford, a strike-breaker, attempted to escape from the barn and was severely beaten. He sustained a broken nose and was otherwise injured, when rescued by officers. He was placed in a taxi-cab for removal to the police station. The taxi-cab driver was pulled from his car and severely and brutally beaten by the crowd. A son of the president of the traction company attempted to escape from the barn and was captured by the crowd and severely beaten and cut. He was taken in an automobile to the hospital for treatment. After the address to the crowd by Conroy and Griffith, three patrol loads of strike-breakers were taken from the barn to the police station, upon the promise of immunity from assault. On the trip to the station they were assaulted by the throng, and from the police station most of them were taken to the county jail. They were cut, bruised and bleeding, some of them suffering from shot wounds. One man was unconscious. The evidence discloses that thirteen people received shot wounds and were taken to the hospital for treatment.

The premise of fact here given, which must be conceded to be a meager description of the occurrences, not only justified but required the finding by the jury that a riot was committed as alleged in the indictment. Every element of the crime is manifested in undisputed evidence. We are thus brought to the question whether the evidence justifies the finding of the jury that the defendant participated in the crime. One police officer testified positively to seeing the defendant in the front ranks of the crowd which was shouting and pressing toward

the car barn in an effort to break through the door then being guarded. Another officer testified that he saw the defendant in the crowd in front of the barn, and later, mounting the roof of the barn, from a ladder. Another witness testified that he saw the defendant stepping from a ladder onto the south-east corner of the roof of the barn. Another witness testified that he saw two men on the barn take iron bolts about one foot long and other articles passed up by the crowd and hurl them through the skylights.

One Miller, superintendent of the traction company, testified that subsequent to his indictment the defendant stated to him that he was in wrong, and knew it; that he was at home between five-thirty and six o'clock when someone told him a man had been shot at the car barn; that he then went to the car barn; that he became excited, went upon the roof and threw bricks and stones through the skylight and that about nine o'clock someone shot at him through the skylight. In this connection this witness testified the defendant requested that the traction company do something to help him out. The admission claimed in the evidence of Miller to have been made by the defendant is both natural and reasonable in the light of existing circumstances. The defendant had formerly worked for the traction company. He knew Miller was on friendly terms with him. He sought his aid and that of the traction company in his extremity.

Another witness testified that on Saturday night, August sixteenth, before the disturbance here adverted to, he heard the defendant say to a group of men, " Wait until our mob get down there and we will clean them out." The evidence given by these witnesses is not disputed. The defendant was not sworn on the trial. The proof thus given fully justified the jury in finding participation of the defendant in the crime of riot.

Being satisfied as I am, that the evidence justified the verdict

rendered, I pass to a consideration of the rulings challenged as erroneous.

(1) The justice who held the court in which the indictment was found presided at the trial. Before proceeding in the trial the defendant made a motion to dismiss the indictment for the reasons set forth in an affidavit made by his attorney. It is therein stated that the charge made by the presiding judge to the grand jury which found the indictment was on or about the following day thereafter published as an advertisement in the Olean *Times,* a newspaper having a wide circulation in the city of Olean and throughout Cattaraugus county; that thereafter and on or about September 20, 1919, the Olean *Daily Herald,* likewise having a wide circulation, published a report of the grand jury proceedings headed " Grand Jury Brought in Report in Riot Cases at Two O'Clock." The affidavit continues: " That as deponent believes and as is generally believed  *  *  *  said advertisement was published at the instigation of the Western New York and Pennsylvania Traction Company. That deponent has inquired of the officers of said Olean *Daily Times* as to who caused said advertisement to be published, and officers of said newspaper have refused to inform deponent. That the riot in connection with which this indictment was found, occurred in connection with the strike of the employes of said  *  *  *  traction company."

The part of the charge to the grand jury identified in the affidavit as having been published is contained in the record. In part, the court said: " Ordinarily I would consider that these general instructions concerning your duties (such general instructions as are always given to grand juries by the court, and as had already been given in this instance) are sufficient; but there are special and unusual reasons at this time why in the opinion of the court further instructions should be given you."

Then follow the " further instructions," which are not necessary to repeat for the purposes of the question presented, ex-

cept as follows : " It is a matter of public knowledge that a
riot occurred a few weeks ago at which property of the street
railway company was destroyed and many persons were brutally
beaten by a mob in the city of Olean."

It is obvious that the motion to quash is not founded upon
either of the grounds specified in section 313 of the Code of
Criminal Procedure. It is, however, urged that owing to a
prejudice resulting from a widely published account of the
charge to the grand jury, the defendant has been deprived of a
trial such as is guaranteed by the Constitution of the State
(Art. 2, §§ 2, 6) and that, therefore, he is entitled to be heard
upon the authority of People v. Glen (173 N. Y. 395) and
People v. Borgstrom (178 id. 254).

Undoubtedly such is his due, provided he has been deprived
of any constitutional right or rights. This practice is older
than the statute and survives the limitation placed upon a mo-
tion to quash an indictment as contained in the Code provision.
The publication of the charge to the grand jury is the ground
upon which the motion is based. This appears from the affi-
davit of counsel which is the foundation of the motion made.
Even if it be conceded that the publication was effected through
the influence of the traction company, or any other party con-
nected with the prosecution, it is impossible to discover in what
respect the rights of the defendant were thereby invaded. The
vice complained of is the publication of the charge resulting in
a public prejudice to the indicted defendants. This argument
might be properly addressed to a motion to change the place of
trial; but fails in every essential to establish that the constitu-
tional rights of the defendant have been in any way impaired
or defeated.

After the defendant had been convicted, upon an application
under section 481 of the Code of Criminal Procedure, in arrest
of judgment, the claim was first made in behalf of the defend-
ant that he did not have a trial upon an indictment found ac-
cording to the requirements of law, and this being so, his

constitutional right was invaded. It was then urged that the statement by the court to the grand jury, " It is a matter of public knowledge that a riot occurred a few weeks ago," took from that body the statutory right of determining upon the evidence before it whether the crime of riot had been committed. This, upon the theory that the grand jury, in determining whether a crime had been committed, is the judge of both the law and the facts. (People v. Glen, 173 N. Y. 401.)

If the motion to quash had been made upon this ground, in advance of the trial, then the question would be here for review. For the purposes of this case, I prefer, however, to consider it. In the first place the suggestion by the court that " It is a matter of public knowledge that a riot occurred a few weeks ago," was indicative only of an aroused public feeling resulting from the occurrences that would be disclosed in evidence before it. This was evidently made for the purpose of impressing the jury with the importance of the criminal charge which it would have under investigation. It is not claimed even by defendant's counsel that this recital approached as a matter of law an instruction that the crime of riot had been committed. The context of the portion of the charge contained in the record makes it clear that the court did not intend and we cannot assume that the jury understood that it was the purpose of the court to assume the function committed by the statutes to the jury, of determining that a crime had been committed.

There is another conclusive reason why we may not infer that the jury was controlled by the charge made. By section 248 of the Code of Criminal Procedure the court is required in charging a grand jury to read to them the provisions of the Code, " from section two hundred and fifty-two to section two hundred and sixty-seven, both inclusive, or give them a copy thereof, and must give them such information as it may deem proper as to the nature of their duties," etc. It may be assumed that the suggestion that " it is a matter of public knowledge that a riot occurred," was erroneous, yet the grand jury

was not bound by it because of the duty enjoined upon it by section 256, that they shall receive none but legal evidence respecting charges of crime brought before its body. To conclude otherwise would involve a charge against the jury that it deliberately disregarded the commands of the statute. This we are not permitted to do. The presumption must prevail, in the absence of proof to the contrary, that both the court and the jury observed the commands of the law. The conclusion is thus reached that the action to quash was properly denied.

(2) It is the claim of the appellant that the trial court erred in omitting and refusing to instruct and in failing to point out to the jury the different degrees of the crime of riot and the punishment following a conviction in either degree.

The court did not, in its instructions to the jury, state or suggest that there were any degrees of the crime of riot, nor was it requested to so charge. After the jury had retired for deliberation and after hours of consideration of the case, they returned into court and requested that the court characterize the crime of which the defendant might be convicted and the penalty therefor. The court declined to give the instructions requested, stating that the crime charged and which they had under consideration was the crime of riot, and that the punishment to be inflicted rested solely with the court. During all this time the defendant and his counsel were present and neither made requests nor took any exceptions.

After the jury rendered a verdict of guilty, the defendant, for the first time, requested the court to instruct the jury " As to the various degrees of riot as defined in section 2091 of the Penal Law, and that the jury may find the defendant guilty of any lesser degree than that charged in the indictment." This the court declined to do and the defendant excepted. It is now urged that it was a reversible error to refuse to give the jury these instructions.

Assuming for the purpose of considering this question that the crime of riot as defined by sections 2090 and 2091 of the

Penal Law, may be subdivided into degrees, an exception taken to a refusal to define the degrees and instruct the jury that the defendant may be convicted of the lesser degree, after verdict has been rendered, presents no error. (People v. Jordan, 125 App. Div. 522; People v. Ennis, 176 N. Y. 289.)

Conceding an error was presented by the exception taken as now contended by the defendant, a reversal of the verdict of conviction is not required because he suffered no injury as a result. Even if it be true, as urged, that the lower grade constituted a misdemeanor only, the sentence was within that grade of offense. (See Penal Law, §§ 1937, 2181, 2182.) This being so, harm did not come to the defendant for the failure of the court to give the instruction requested. (People v. Granger, 187 N. Y. 67.)

In my judgment, the crime of riot is defined by section 2090 of the Penal Law, and that section 2091 simply provides for the punishment of the crime. It classifies the punishment into three groups, dependent upon the character of the acts constituting the crime. The punishment for the first group must be by not more than five years' imprisonment, or by a fine of not more than $1000, or both; the second group by not more than two years' imprisonment or by a fine of not more than $500, or both; the third group by not more than one year's imprisonment, or by a fine of not more than $250, or both. This section does nothing more than to provide for the punishment to be inflicted upon conviction of the crime of riot. It is not in any sense attempting to classify the degrees of the crime of riot. The argument of the appellant rests solely on the claim that the differentiation in punishment necessarily makes the section classify the crime of riot into different degrees, and that the 3d subdivision falls within the grade of a misdemeanor. Section 2 of the Penal Law classifies crime as felonies and misdemeanors. This section defines a felony as a crime which is or may be punishable by death or imprisonment in state's prison. A misdemeanor is defined as any crime other

than a felony. The inquiry follows—Could a party convicted of riot, falling within either of the three groups or subdivisions of section 2091, be confined in a state prison? This query is answered definitely by section 2182 of the Penal Law, which provides: "Where a person is convicted of a crime, for which the punishment inflicted is imprisonment for a term of one year, he may be sentenced to, and the imprisonment may be inflicted by, confinement either in a county jail, or in a penitentiary or state prison. No person shall be sentenced to imprisonment in a state prison for less than one year.

The trial court, by this section, was permitted to send the convicted defendant into state's prison, regardless of which of the three subdivisions of section 2091 is applied on the facts proven in fixing the sentence. It follows, therefore, necessarily, that riot in all cases is a felony.

The trial court adopted the view that the provisions of section 2091 were for its guidance solely in passing sentence and this view is, in my judgment, in accord with the scheme of the law.

(3) The appellant urges that he has not had a fair and impartial trial. Before entering upon the trial the defendant objected to proceeding before the sitting judge. The reasons assigned in the statement of counsel, in open court, were, that it appeared from the statements made by the court to the grand jury who found the indictment that it must have settled convictions that a crime had been committed and that the striking railroad employees were responsible therefor; that the charge to the grand jury had been published in the press, which had led to considerable discussion by both the friends of the traction company and the striking employees, respecting the propriety of the presiding judge sitting in the trial of the case. It was expressly stated, however, that the honor, good faith or integrity of the court was not intended to be questioned. The objection was overruled. I see no impropriety in the decision made.

(4) Again, on the pronouncement of judgment, the appel-

34

lant, upon an application in arrest of judgment, charged the judge who presided with actual bias. Affidavits were read, upon which the charge and argument were based.

The evidence furnished by the affidavits of the jurymen who sat in the case was inadmissible to impeach the verdict rendered. This rule is too well understood to require discussion or authority.

The evidence furnished by the remaining affiants may be properly epitomized as the aftermath of helpless disappointment.

The record shows that throughout the trial the defendant sought to inject into the case as issues to go to the jury the inefficiency of the sheriff's department; that the strike was instigated purposely by the tranction company; that crimes were committed by the strike-breakers in the course of the commission of the riot, which were ignored by the authorities and many more less important considerations. The sole theory urged in support of the competency of evidence upon these issues was, *first,* justification for the conduct and overt acts charged as riotous, and *secondly,* the impeachment of the credibility as witnesses, of the sheriff's officers and the traction officials. We may properly dismiss the consideration of the errors here urged as unworthy of discussion. If the crime of riot was committed, there could be no such thing as justification for it. The cross-examination of witnesses upon extraneous issues were within the sound discretion of the court. The record abounds with exceptions to rulings upon questions purely within the discretion of the trial judge. They present no error.

(5) Pending the trial, two defendants jointly indicted with the appellant sought the privilege of pleading guilty to the lesser crime of " unlawful assemblage." (See Penal Law, § 2092.) After conference with counsel for the appellant and district attorney, the court accepted such pleas in the absence of the jury sitting to try the defendant. It is now argued that the knowledge of such pleas became generally known and

reached the jury, resulting in a prejudice against the defendant. If we so concede, it would not present error and the court would have been within its rights to have accepted such pleas in open court and before the sitting jury in the trial of the defendant. The course followed in that matter was the one acquiesced in by the appellant's counsel, and of which he now complains. Neither error nor criticism against the court or district attorney is justified or proper in the premises.

Most careful examination of this record convinces me that the jury could not well, upon this evidence, have reached a conclusion contrary to that of guilt of the defendant, and that under extreme provocation the court and the district attorney showed commendable forbearance and moderation and that this trial is not open to the suggestion that it was not a fair one. The punishment imposed was most lenient, in view of all the circumstances of the case. The judgment of conviction should be affirmed.

All concur, KRUSE, P. J., not sitting.

Judgment of conviction affirmed.

## NOTE ON RIOT, PENAL LAW, § 2090.

*General definition.* In interpreting this statute which defines an offense well known at common law, we are entitled to seek aid from common law definitions of such offense. People v. Most, 128 N. Y. 108, 8 N. Y. Crim. 273. See Adamson v. New York (1907), 188 N. Y. 255; Marshall v. Buffalo (1900), 50 App. Div. 149.

*Act of single individual.* One who throws stones against windows, in consequence whereof a crowd gathers but does not join in the act cannot be convicted of rioting. Rodmans Case (1817), 2 City Hall Rev. 88.

The act of a crowd of young men and boys in taking portions of a building is not a "riot" where it appears that they were bent only on mischief and dispersed on the mere approach of a single police officer, as it cannot be said that they intended to accomplish their purpose with force and violence. Adamson v. New York, 188 N. Y. 255.