GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Rehabilitator of the STATE TITLE AND MORTGAGE COMPANY, and STATE TITLE AND MORTGAGE COMPANY, Plaintiffs, *v.* EUGENE J. CARR and Others, Defendants.

GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Liquidator of GENERAL SURETY COMPANY, Plaintiff, *v.* HAROLD G. ARON and Others, Defendants.

Supreme Court, Additional Special Term, New York County, April 1, 1936.

*Goldwater & Flynn*, for Leo J. Ehrhart.

*M. N. Koven*, for Frank H. Kenny, Albert N. Roemer and Edmund J. Donegan.

*Kaufman, Weitzner & Celler*, for Arthur W. Little and Barron G. Collier.

*Kadel, Van Kirk & Trencher*, for W. O. Smith, D. H. Knott and John Kadel.

*E. J. Donegan*, for Max N. Koven.

*Albert C. Spooner*, for Harold G. Aron.

*Simpson, Thacher & Bartlett*, for Hamilton C. Rickaby.

*H. A. & C. E. Heydt*, for Walter Stabler.

*Coudert Bros.*, for Wallace J. Falvey.

*Harry J. Ahlheim*, for Ambrose G. Todd.

*George D. Zahn*, for Louis Gold.

*Weller, Rogers, Bergen & Rockford*, for R. W. Higbie and H. A. Higbie.

*Joseph V. McKee*, for John A. Dilliard.

*Peter J. Donoghue*, for James J. Hoey.

*James E. O'Kane*, attorney in person.

*William Walzer*, for Audley Clarke.

*Herbert Ascher*, for William H. Lyons.

(All of the above attorneys appear for the motion.)

*Harry Rodwin* and *A. C. Bennett* [*A. J. Halprin, S. Boksenbom* and *A. Schlossburg* of counsel], for the Superintendent of Insurance of the State of New York, opposed.

FRANKENTHALER, J.   Two actions brought by the Superintendent of Insurance against directors of the State Title and Mortgage Company and General Surety Company to recover for various acts of mismanagement, waste, non-feasance, etc., alleged to have

occurred during their respective terms of office, have been assigned for trial to this court, sitting in Special Term, Part VI. Twenty-two of the thirty-two different defendants now move for an order referring the actions back to Special Term, Part III, the calendar part, on the ground that the previous proceedings had before this court in connection with applications for leave to compromise the actions have prejudiced the court against the defendants and have made a fair and impartial trial " difficult, if not well-nigh impossible."

The actions were originally called for trial at Special Term, Part III, on October 18, 1935, and the justice then presiding in that part assigned them for trial before himself at Special Term, Part IV, on October 23, 1935. Thereafter a petition for leave to compromise the actions as to most of the defendants was submitted to this court, sitting in the Additional Special Term for Rehabilitation. While the settlement application was pending before this court, the trial was adjourned by the justice sitting in Special Term, Part IV, from time to time, and finally on November 27, 1935, the cases were referred for trial to this court, then sitting in Special Term, Part VI. According to the defendants, this was done " upon the consent of all the parties for the express reason that the pendency of the application for leave to compromise the actions, and the necessity of repeated adjournments of these actions, until such applications were decided, made " the order of reference " expedient and advisable." On December 18, 1935, this court denied the petition for leave to compromise the actions, on the ground that the settlement was recommended solely because so many defendants were claimed to be " financially irresponsible " and their irresponsibility had not been affirmatively shown in the Superintendent's petition. The denial was " without prejudice to a renewal on proper papers." February 10, 1936, was then fixed as the date of trial.

On February tenth, when the actions were called for trial, an adjournment was asked by many of the defendants " to enable them to submit to financial examination by the Superintendent's counsel and to submit new offers of settlement and to prepare for trial in the event that settlements would not be made or approved by the Court." An attorney representing several of the defendants moved orally, at the time, that the actions be assigned to another justice for trial, on the ground that this court had been " engaged in the rehabilitation part " and had " entertained the application for settlement," and had " listened to all of the arguments of counsel." Although this attorney stated that " everyone in this room has absolute confidence in your Honor's fairness, integrity and everything else," he maintained that the court was not " qualified " to try the actions. The court then asked, " Is there anyone else

who cares to join in this application?" No one responded. The motion was thereupon denied and the trial adjourned to March fifth.

Thereafter seventeen defendants made new offers of settlement which the Superintendent of Insurance submitted to this court for approval. While these applications were pending the trial was adjourned to March nineteenth. On March eighteenth the court handed down an opinion declining to grant any of the applications. Six, based solely upon the financial circumstances of the offerors, were denied as inadequate. Four, predicated upon the alleged existence of doubt as to liability, as well as upon the claimed financial irresponsibility of the offerors, were denied with leave to renew on papers indicating the existence of a reasonable basis for the doubt. The remaining seven applications, involving relatively small amounts, were held in abeyance.

When the actions were called for trial on March nineteenth, counsel for one of the defendants, despite the fact that on February tenth he had expressly indicated that he did not join in the objection then made to the trial of the actions by this court, moved orally that both cases be referred back to the calendar part. Although he admitted that most of the settlement applications raised the question of " the financial responsibility of the defendants more than that of the legal liability," he added: " Nevertheless, I think your Honor would have to be something more than human if, sitting in these cases, there were not something of a predilection against the defendants. I think it would be most difficult for your Honor to have presented to you the defenses on which you would have to rule with respect to the defendants who had made offers and whose offers your Honor has declined to accept. I think I may say that without in the slightest impugning your Honor's sincerity, if your Honor says you are not in the slightest degree affected by these applications. I don't think the question is one of the attitude of the Court and the best efforts of the Court, but I think it is one in which is involved an almost impossibility of severance of approach, mental attitude toward the cases, since if your Honor were to find for the defendants, you would be confronted by the fact that applications with substantial sums of money offered had been declined by your Honor." Various other attorneys joined in the application. Permission was granted to make a formal application upon written papers and the trial was in the meantime adjourned.

The claim of disqualification in the formal motion is based upon the following: (1) The " virtual human impossibility for the Court to determine with absolute impartiality the rights of the respective

parties at bar " in view of the " sympathetic predisposition in favor of * * * certificate holders " derived by the court from its work in connection with the rehabilitation of the mortgage guaranty companies; (2) the possibility that the offers of compromise made by many of the defendants and rejected by the court as inadequate " might subconsciously be regarded by the Court as an admission of liability," together with the further possibility that " the information which the Court has received with respect to the financial status of the defendants might also become a factor in the ultimate judgment of the Court, in the event that it presided at the trial and was required to determine the ultimate liability of the defendants at bar;" (3) the possibility that " the Court having disapproved offers of compromise which would have netted the estate of these companies a sum of $143,850.00 might be influenced subconsciously in determining ultimate liability by the consideration that a decision in favor of the defendants would subject the Court to criticism because by its disapproval of the offers of compromise the estate has been deprived of the sums of money offered at bar;" (4) that the court's opinion in disapproving applications to compromise the actions as to many of the defendants indicated its feeling that the defendants, the directors of the companies, should contribute liberally and generously out of their substance to the end that a fund be available for distribution among the certificate holders and other creditors of the companies, and (5) that the same opinion expressed the hope, if not an implied invitation to the defendants, to increase their offers. The principal moving affidavit states that while no claim is made that the court " is *consciously* affected with the *bias of animus* against the defendants herein " nevertheless " perforce of circumstances " it " is or may be possessed of a definite though perhaps *subconscious* predisposition in favor of the claims asserted by the plaintiff."

It is clear that none of the objections urged by the defendants disqualify the court from presiding at the trial of the actions against them. The fact that the court has acquired knowledge of their offers of settlement is wholly insufficient as a ground of disqualification. As counsel for the Superintendent of Insurance points out: " It is quite common to attempt settlements immediately prior to or during trials and judges often proceed to trials with the knowledge of settlements that have been offered by the parties. Such offers of settlement are made without prejudice to the rights of any of the parties." As for the statements in the petitions of the Superintendent of Insurance for leave to compromise that he " is advised by his counsel that a large judgment would probably be obtained " against most of the defendants, no court could possibly be influenced

by them in its determination of the litigation at the trial, for the applications were made without notice to the defendants, who, therefore, were without an opportunity to contradict this unsupported conclusion.

The claim that the court's previous opinion indicated that it felt that the defendants should contribute liberally and generously so as to make a fund available for certificate holders and their creditors is without foundation. Judicial approval of most of the proposed settlements was sought by the Superintendent solely on the basis of their ability to pay, the Superintendent expressly claiming that he had good causes of action against them. *In passing upon the applications the court was, therefore, obliged to confine its inquiry exclusively to the relation between the amounts offered and the financial circumstances of the offerors.* Except as to four defendants whose liability was stated by the petitioner to be doubtful, this court's opinion expressly declared that the applications " *require no investigation of the merits of the litigation.*" As to the four defendants above referred to, the court held that insufficient facts had been submitted to enable it to determine whether there was " at least reasonable basis for the view that liability is doubtful." All that the court decided as to the remaining defendants was that " *on the sole basis of ability to pay, without any consideration of the question of liability,* many of the offers were inadequate," and the rest were too small to make settlement worth while if the actions were to continue against the wealthier defendants. There was no intimation in the opinion that any of the defendants should pay liberally or generously, *or at all.* Nor was there any invitation, express or implied, to the defendants to increase their offers, as the movants contend. Although action upon the smaller settlements was held in abeyance until it could be ascertained whether or not the actions would go to trial as to the other defendants, no suggestion was made or intended that the latter should increase their offers. Whether they would do so or not was left entirely to their own volition.

The contention that " it is * * * a virtual human impossibility for the Court to determine with absolute impartiality the rights of the respective parties at bar " because its work in connection with the rehabilitation of mortgage guaranty companies has created in its mind a " sympathetic predisposition in favor of * * * certificate holders, in any potential conflict of interest " between them and others, such as the defendants, represents nothing more than a bare assertion. No facts even tending to establish the truth of this statement are set forth. This court has at all times decided matters affecting the interests of certificate holders according to the law as the court understood it and solely according to

the merits. Its decisions have been against as well as in favor of certificate holders. The court believes that it is as free from bias or prejudice in litigation involving certificate holders' rights as any one can be. No evidence whatsoever to the contrary is submitted or even remotely intimated. The weakness of the claim of disqualification here may be made readily apparent by reference to the case of *People* v. *Brown* (193 App. Div. 203). The justice who presided at the trial of that case had previously held the court in which the indictment was found. He had instructed the grand jury that " It is a matter of public knowledge that a riot occurred a few weeks ago at which property of the street railway company was destroyed and many persons were brutally beaten by a mob in the City of Olean." The court had also made other statements to the grand jury which counsel for the defendant contended indicated " that it must have settled convictions that a crime had been committed and that the striking railroad employees were responsible therefor," although " it was expressly stated, * * * that the honor, good faith or integrity of the court was not intended to be questioned." The objection made at the beginning of the trial to proceeding before the sitting judge, on the ground that he was biased, was overruled. On appeal this ruling was sustained and the claim of disqualification held to be without merit.

The argument that the court's knowledge of facts bearing upon the financial condition of many of the defendants may influence the amount of any judgment it may render has nothing to support it. The amount of the judgment, if any, will depend upon the plaintiff's damage, not upon the defendants' ability to pay. The claim that the court " might be influenced subconsciously in determining ultimate liability, by the consideration that a decision in favor of the defendants would subject the court to criticism, because by its disapproval of the offers of compromise the estate has been deprived of the sums of money offered at bar," is pure speculation without the slightest factual foundation. It might equally well be argued that a justice who had not disapproved previous offers of compromise would be disqualified because he might fear criticism of certificate holders should he decide the litigation against them. Courts are continuously confronted with situations where their decisions subject them to criticism by those adversely affected, who may often represent a large part of the community. Something more than a *conjectural* fear of criticism must be shown to make out a case for disqualification.

For the reasons indicated there is no substance to the claim that the court is *legally disqualified* from proceeding at the trial of these actions.

The court is mindful, however, of the fact that next in importance to the duty of rendering a righteous judgment is the desirability that the parties to the litigation have the utmost confidence in the court's impartiality and freedom from bias. Although it is expressly stated that everyone has confidence in the court's fairness and integrity, twenty-two of the defendants assert their belief that the court, however unconsciously, is unable to give them a fair and impartial trial. The fact that the cases are to be tried in equity, without a jury, and that the court is accordingly to decide the facts as well as the law, is a circumstance which entitles the defendants' claim to more weight than it would otherwise merit. Then too, although knowledge of settlement negotiations is no legal ground for disqualification, it should not be entirely disregarded. This was recognized in connection with a call of cases for attempted conciliation tried out some time ago in this court. The notice to this effect, published in the New York Law Journal (see for example N. Y. L. J. Oct. 1, 1934, p. 1013), expressly stated that if efforts to conciliate failed the case would be tried "by another justice." Furthermore, it is well settled that evidence as to settlement negotiations is inadmissible at a trial and that its reception over objection constitutes reversible error. (*Tennant* v. *Dudley*, 144 N. Y. 504; 22 C. J. p. 308 *et seq.*)

In the light of the foregoing the court, although it knows that it is able to try the actions without bias or prejudice, has come to the conclusion that the importance of dispelling from the minds of litigants any thought or suspicion that they may not be receiving even-handed and impartial justice, by reason of "unconscious bias," renders it desirable that the court refrain from trying the cases and refer them back to the calendar part. Faith that justice is being done is secondary only to the actual dispensation of justice.

The motion is accordingly granted to the extent indicated. Settle order.