254 A.2d 417.

FRANCIS MATEER *vs.* MARY MATEER.

JUNE 26, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action to recover the sum of $3,100 plus interest and costs which plaintiff claims he loaned to the defendant. The case was heard before a justice of the superior court sitting without a jury. At the conclusion of the plaintiff's presentation of his case, the defendant moved under rule 21 of the rules of civil procedure of the superior court to add the plaintiff's son Philip as

a party defendant. The trial justice denied the defendant's motion and, after both parties rested, he rendered a decision for the plaintiff for $3,100 plus interest and costs. A judgment including both orders was entered. He also denied a motion filed by defendant under superior court rules of civil procedure 59(a), 59(e) and 52(b) to alter or amend judgment and/or for a new trial. A judgment embodying this ruling and affirming the prior judgment in favor of the plaintiff was also entered. The cause is before this court on the defendant's appeal.

The circumstances out of which this controversy arose are as follows. The defendant married plaintiff's son Philip in June 1963. At the time of her marriage to Philip she owned a house on Wethersfield Drive in Warwick which she had purchased prior to her marriage to Philip. She had borrowed $3,000 on a personal note from a local bank as a down payment and the same bank took a mortgage on the property to secure payment of the balance of the purchase price. The personal note was for 90 days and the mortgage was in the usual form. The $3,000 personal note was to be paid out of her share of the proceeds from the sale of another home that she owned with her first husband, Williams, located on Delwood Road in Warwick, pursuant to the terms of a decree of divorce from Williams. At the maturity of the 90-day note the bank had extended it for a second 90-day period because she had not received the proceeds of her share of the Delwood Road house from Williams. By the time the extension was expiring she was married to Philip and he was living with her in the Wethersfield Drive home. She still had not received her share of the proceeds of the Delwood Road home from Williams.

The present dispute involves an alleged loan of $3,100 by plaintiff to defendant. The material evidence pertaining to the loan is in direct conflict. The plaintiff's version of what transpired is as follows. About three months after

their wedding Philip and defendant came to his house where he met his daughter-in-law for the first time. In January 1964, they came again and defendant asked plaintiff for a loan of $3,100 which she said she needed to pay the bank. Philip was present but defendant did all the talking for the loan. The plaintiff loaned her the $3,100 by giving her a check on which defendant inscribed her name as payee and then endorsed on the back. She promised to repay him in one lump sum from her portion of the proceeds of the Delwood Road house when it was sold. In the summer of 1964, defendant and Philip began to have marital problems and on August 31, 1964, defendant filed for divorce from Philip. On October 26, 1965, a decision was rendered granting her a divorce from Philip and a final decree was entered on May 26, 1966. The plaintiff asked defendant for payment of the loan. She never denied that she owed him the money, but no part of the loan has been repaid. This action was commenced on March 14, 1966.

While under cross-examination by defendant's counsel, plaintiff was shown a paper which is in evidence as defendant's exhibit A. It is a document containing a statement that on January 17, 1964, Philip and defendant had executed a demand promissory note to plaintiff for $3,100. Defendant's exhibit A purports to authorize plaintiff to enter a confession of judgment in plaintiff's favor if the note were not paid on demand. The document contained Philip's signature, but not that of defendant. The plaintiff admitted having seen the document for the first time in July 1964. He said it was drawn up by his son Donald, but denied that he had authorized Donald to prepare it.

Donald testified that he drafted the paper sometime during the third week of August 1964. He said he did it to protect his father, but denied that plaintiff authorized him to draw up the paper. He corroborated plaintiff's testimony that defendant acknowledged she owed plaintiff the $3,100,

and he testified that defendant told him she intended to pay back his father. He also admitted that he induced Philip to sign the document but that defendant refused to do so.

The plaintiff's last witness was his son Philip, whose pertinent testimony is as follows. When the extension of defendant's 90-day note had nearly terminated, he suggested that they visit his father. He testified that:

> "The second period was coming to the end when I suggested we go up and see my father and see if he might loan us the money, I said, 'we' because I was living with her and married to her."

He further testified that defendant wanted to borrow the $3,100 in order to repay the loan she owed to the bank and that she said she would use the equity from the first house to pay plaintiff. He denied that the $3,100 was a gift to either him or to defendant. He stated that defendant acknowledged her indebtedness to plaintiff for the $3,100 many times and always intended to repay the loan. The first house, he said, was sold after the final decree of divorce had been rendered. With reference to defendant's exhibit A, Philip said the first time he saw it was after they were separated, and he denied that his father had asked him to sign it. He said he signed it at the request of his brother Donald.

After plaintiff rested, defendant testified in her own defense. She testified that she never at any time asked plaintiff for a loan; that it was Philip's idea that he approach his father and obtain the money to pay off the loan at the bank; that Philip had told her that his father had some money that he had accumulated for his son and that he would ask him for it; that she was not present when Philip obtained the check from his father and did not know of the existence of the check until Philip alone showed it to her; and that she signed it because Philip said the note at the bank was in her name and that it was to be used to

pay off the note at the bank on the second house where she and Philip were living. She stated that the first time she had seen defendant's exhibit A was after she started divorce proceedings against Philip; that plaintiff had never asked her for the repayment of a loan; that the first house was sold but she never received any money from the proceeds of the sale; and that the second house remained in her name and the $3,100 was used to pay off her obligation to the bank. She also said in reply to a question by her counsel in direct examination that if there was any obligation, it was a joint obligation. She admitted that plaintiff had asked her many times if her house had been sold, but she said he never applied any pressure. She insisted that the transaction was between plaintiff and her husband.

At the conclusion of the hearing the trial justice rendered a decision in favor of plaintiff for $3,100 plus interest and costs. He found that this was a loan made by plaintiff to defendant; that she was the sole beneficiary of the check; that the house was in her name and the money was used to pay a loan made by the bank to her; and that plaintiff did not authorize his son Donald to draw the document marked defendant's exhibit A. He also indicated that if Philip had been made a party, he would still have found for plaintiff against defendant and would have found for the son. A judgment incorporating his decision and his order denying defendant's motion to add a party defendant was entered on July 3, 1968.

On September 13, 1968, after arguments of opposing counsel, the trial justice denied defendant's motion to alter or amend judgment and/or for a new trial. After reviewing the grounds urged by defendant in the context of the pertinent evidence, he made the following findings of fact:

1. The money was actually loaned by the plaintiff to the defendant and not to her and her husband Philip.

2. The plaintiff did not authorize his son Donald to

draw a promissory note that stated that both defendant and plaintiff's son Philip promised to repay the $3,100 and plaintiff did not ratify the same.

3. The parties contemplated that defendant would have a reasonable time in which to dispose of the first house in order to repay the plaintiff, but the sale of that house was not a condition precedent to the repayment of the $3,100 loan.

4. That the first house was sold.

5. That the money transferred by plaintiff to defendant was not a gift.

6. By not raising the issue of venue prior to the trial the parties waived that issue.

## I

We consider first defendant's contention that the superior court, sitting in and for the county of Kent, lacked jurisdiction to hear and decide this case, and that therefore the action should be dismissed. The defendant raised this question for the first time in the superior court, with no special pleas and no prior motions, after completion of the trial and after the trial justice rendered his decision on the merits. Specifically, she raised this question in her motion to alter or amend judgment and/or for a new trial and based her contention then, as she does now, on her claim "* * * that all papers in the case were marked Providence SC and therefore the Superior Court for the County of Kent is without jurisdiction to hear and try this case."

The trial justice noted that some of the papers were marked county of Providence and that most, if not all the papers, were marked Kent County; that the papers were filed in Kent County; that the returns were made in Kent County; and that the matter was tried in Kent County. He then held that if Kent County did not have venue, the parties waived this issue by not raising it prior to trial. We agree.

The question raised by defendant is one of venue and not jurisdiction. Rule 12(h) of the rules of civil procedure of the superior court, on which defendant relies, provides in part that:

"* * * A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, * * * except (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

The exception enumerated in the above-quoted rule does not extend to the defense of improper venue, which must be asserted either in a responsive pleading or by motion as provided for in rule 12(b). A motion making the defense of improper venue must be made before pleading if a further pleading is permitted. Thus, a party is deemed to have waived the defense of improper venue under the general provisions of rule 12(h), unless he has raised such defense by motion or by answer. The latter method is available to a party only if he has not made any rule 12 motion prior to answering. See 1A Barron and Holtzoff, *Federal Practice and Procedure* §§354-370 (Wright ed. 1960).

## II

We come now to defendant's contention that the judgment and the denial of the motion for a new trial and/or to alter or amend judgment were against the law and the evidence. The defendant's first argument, as she states it, is that if the money which passed from plaintiff and eventually got into the hands of defendant was considered to be a loan to defendant, it is clear that the understanding between all the parties was that it was not due and payable until she had received the proceeds from the sale of the first house; that it is clear from the evidence that even up to the time of trial she had not received any of the proceeds of the sale of the first house; that the contingency upon

which the payment of the loan was to be made had not occurred; and that therefore the maturity date of the loan had not arrived and there was nothing due and payable at the time of the trial.

In support of this argument she points to the language of plaintiff's complaint wherein he alleges that on January 17, 1964, he loaned $3,100 to defendant "* * * with a promise to pay in full within a short time, to wit when the home she owned with her prior husband, is sold and the proceeds divided." Additionally, she refers to certain portions of the transcript where the witnesses testified that defendant said she would repay the loan from her portion of the proceeds of the first house.

On the question of whether or not there was a loan by plaintiff to defendant, the trial justice accepted plaintiff's testimony and rejected that of defendant. It is well settled that where the parties submit their case on the law and the facts to a trial justice sitting without a jury, his findings on conflicting evidence are entitled to great weight and will not be disturbed by this court unless they are clearly wrong or his decision fails to do substantial justice between the parties or he has misconceived or overlooked material evidence. *Rogers* v. *Zielinski*, 99 R. I. 599, 605, 209 A.2d 706, 709. After examining the record we cannot say that on this issue the finding of the trial justice is clearly wrong or that his decision fails to do substantial justice between the parties. Nor are we persuaded that the trial justice misconceived the law or that he overlooked or misconceived material evidence in finding that plaintiff had made a loan of $3,100 to defendant.

For the same reasons there is no merit to defendant's contention that if there was an obligation to the plaintiff, it was a joint obligation of Philip and defendant. Philip's statements that it was his suggestion that "we" approach his father and ask him to loan "us" the money are not

binding on plaintiff. The trial justice, accepting plaintiff's testimony and rejecting that of defendant, found as a fact that this was a loan to defendant. His finding is supported by the evidence.

The trial justice disagreed with defendant's contention that even if it is found that plaintiff loaned defendant the money in question, before the loan could become due and payable there had to be a sale of her first house and the receipt of her portion of the proceeds. He found, as we have already stated, that defendant would have a reasonable time in which to dispose of the first house in order to repay plaintiff and that the receipt of the proceeds of such sale was not a condition precedent to the repayment of the loan.

It may very well be that the evidence on this issue was reasonably open to different conclusions, but, as the court said in *A. D. Juilliard & Co.* v. *American Woolen Co.*, 69 R. I. 215, 221, 32 A.2d 800, 803, "* * * in such case this court will not disturb the findings of fact made by a trial justice sitting without a jury unless such findings are clearly wrong." Since there is competent evidence to support the trial justice's findings on this issue, we cannot say that his findings are clearly wrong and they must stand.

The defendant's next contention is that the trial justice erred in denying her motion to join Philip as a party defendant under rule 21 of the superior court rules of civil procedure which reads, insofar as pertinent here, as follows:
"* * * Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

We note here that the defendant did not object to the trial justice's ruling; nor is there anything in the transcript indicating that she was denied the opportunity to do so. In the circumstances it does not appear that this issue has been properly raised.

However, for the purposes of this case, we shall assume, without deciding, that the question is properly before us. The trial justice based his ruling on the ground that defendant had ample time to join Philip as a defendant prior to the trial and that bringing him in at that late date might result in a continuance of the case.

Rule 21 is patterned after rule 21 of the Federal Rules of Civil Procedure. Since we have not previously had occasion to interpret this rule, we look to the interpretation placed on the rule by courts which have considered it. The rule is discussed in 2 *Barron and Holtzoff, Federal Practice and Procedure* §543 (Wright ed. 1961) starting at page 216. The authors state that the granting or denial of a motion to bring in additional parties, or to drop a party to the action, is not a matter of right but rather one of discretion, and that the order may not be disturbed unless abuse of discretion is shown. They further point out that while there is no time limit for such a motion, the court will deny it if it comes so late that it will delay the case. See also *John* v. *Fernandez,* 124 Vt. 346, 205 A.2d 552.

Thus the only question before us is whether the trial justice abused his discretion in denying defendant's motion.

The defendant testified during the trial that she told her attorney about defendant's exhibit A and the circumstances surrounding it. The defendant could have brought this motion prior to the trial since all the evidence she relies on was known to her at that time. If the trial justice had granted her motion, Philip would have had to be served with a summons and a copy of the complaint. In addition, he would have had the right to take 20 days to answer the complaint. This might have required a continuance of the trial. In the circumstances we cannot say that the trial justice abused his discretion in denying the defendant's motion.

The defendant's appeal is denied and dismissed, and the

cause is remanded to the superior court for further proceedings.

*Lavine & Sutherland, Lewis Z. Lavine, Howard S. Portney,* for plaintiff.

*Robert R. Afflick,* for defendant.