David 0. Boehm, J.
The petitioner, Frank Capuano, is charged with violating subdivision (a) of section 1120 of the Vehicle and Traffic Law on September 2, 1971 in the Town of Rush. Pursuant to CPL 170.15 (subd. 3), he now seeks to remove the trial from the Rush Town Court, asserting that he cannot receive a fair and impartial trial there and that the Town Justices should be disqualified from hearing the case.
A brief recapitulation of the underlying facts constituting the background of this application is in order.
The New York State Environmental Facilities Corporation, a public authority, and the City of Rochester entered into a contract under which the Environmental Facilities Corporation agreed for a period of two years to dispose of the city’s solid waste refuse in a solid waste disposal facility established by the corporation in the Town of Rush on the site of the State Agricultural and Industrial School. The establishment of this dump in their town aroused the citizens of Rush to such an extent that many meetings were held, there were demonstrations, and *482 mass picketing to block the entry of trucks and it was necessary to call out the Sheriff and his deputies to restore order and the free flow of traffic.
Over the sustained protests and strong opposition of its residents, the landfill site was established in Bush and is now in operation. It was necessary, however, for the city and the corporation to obtain a temporary injunction in Supreme Court against town interference with the landfill operation, and an action for a permanent injunction is still pending.
From that time to the present, petitioner claims, the city’s refuse vehicles have been deliberately harassed by other vehicles and pedestrians while driving to and from the landfill site. He alleges that not only is he presently involved in litigation arising out of an accident in Bush while he was driving one of such vehicles, but it was also while he was operating a city refuse truck that the incident occurred which resulted in the pending traffic charges being brought against him.
The Supreme Court action brought by the city and corporation named as defendants the town, the Town Supervisor, the individual members of the Town Board and a private citizens’ group known as the Bush Citizens to Protect the Environment. The same defendants in that action countersued to permanently enjoin the operation of the landfill facility, and that action is also presently pending in Supreme 'Court.
As a result of all that has transpired and is now pending, Capuano asks that the traffic charges against him be moved out of the Town Justice Court, particularly .since he is an employee of the City of Bochester and the incident occurred while he was driving the city truck in the course of his employment as a refuse truck driver to and from the landfill site. Because of Capuano’s status as an employee and, no doubt, because of the city’s obvious interest in the matter, he is represented by the city Corporation Counsel.
The intensity of the feelings that the establishment of the landfill has aroused in Bush makes Capuano’s concern an understandable one. It would be difficult if not impossible for him to obtain impartial, objective jurors in a jury trial even if he were entitled to one. As to a trial before a Town Justice, the court takes judicial notice of the designation of town office candidates, including that of one of the incumbent Town Justices, by the B.U.S.H. party) an independent group organized for the sole purpose of nominating and electing candidates committed to a strong anti-landfill position and takes judicial notice further, that every such B.U.S.H. candidate was elected to office in the November election, including the Town Justice.
*483 In addition, as Capuano points out, the Town Justices are members of the Town Board and are each individually named as defendants in the Supreme Court suit.
The only affidavit submitted in opposition is that of the attorney for the town. He is also the attorney for Rodney Koziatek who has similar charges pending against him in the same Town Court as a result of the collision in Rush between the car owned and operated by Koziatek and the City of Rochester truck operated by Capuano as aforesaid on September 2, 1971.
The town argues in opposition: (1) that the only unbiased witness is a Mrs. Jeanette Pegott who lives in Rush and who would be inconvenienced by changing venue to another town; (2) the facts in both cases are so intermeshed that they should be tried by the same court; (3) neither of the two Town Justices was asked by Capuano to disqualify himself. The moving papers are silent as to whether the Town Justices were asked to disqualify themselves before this motion was brought. The court assumes, therefore, that they were not, although there is a general reference made in the respondent’s brief to the contrary.
Before bringing this motion, the petitioner should have first requested the two Town Justices to disqualify themselves because of the climate of opinion prevailing in the town. Failure to do so operates as a procedural bar to this application and the petitioner’s motion must be denied on this basis alone.
However, this would not be the only reason for denial. To avoid any impression that the prerequisite of requesting the Town Justices to disqualify themselves would be enough, some additional discussion is in order.
The section under which this motion is brought, CPL 170.15 (subd. 3), provides for the removal of an action from one local criminal court to another by a Judge of the County Court where death, disability or other incapacity or disqualification of all of the Judges of such local criminal court would make disposition of the action, within a reasonable time, unlikely.
CPL 230.20 (subd. 2) provides for change of venue by the Appellate Division from the superior court of one county to the superior court of another county if there is ‘ ‘ reasonable cause to believe that a fair and impartial trial cannot be had in such county ’ ’.
CPL 170.15 (subd. 3), unlike CPL 230.20 (subd. 2) makes no provision for a change of venue where. it is claimed that an impartial trial cannot be had.
The reason for the difference between the two sections may have been the Legislature’s belief that prejudice or bias would *484 be more apt to influence a potential jury in a superior court than a Judge in a local criminal court; that if the Judge believed his decision might be the product of bias, he would disqualify himself, something a jury was not in the same position to do. However, such reasoning would not apply to a jury trial in a local criminal court. Notwithstanding this, there is no way provided in the CPL to transfer a jury trial from one local criminal court to another because of local bias.
The logic for any such distinction between a trial in a superior court and a trial in a local criminal court, both involving criminal charges, is not at all clear. The end result could be equally disastrous for the defendant. Notwithstanding this, the court is bound by the clear dual criteria created by the Legislature. Removal from one local criminal court to another can only be ordered for the specified reasons of death, disability or other incapacity or disqualification of all of the Judges in that local criminal court.
However, there is no way disqualification can be directed except pursuant to section 14 of the Judiciary Law, which provides in part: “A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party * * * or in which he is interested ”.
The nature of the interest required to disqualify a Judge is an interest as a party or in a pecuniary or property right from which he might profit or lose. (Matter of Hancock, 91 N. Y. 284.)
Where the grounds for disqualification are expressly set out in the Constitution or in a statute, they are regarded as exclusive. None but these can operate as a mandatory cause for disqualification. While section 14 of the Judiciary Law should be liberally construed to fulfill its salutary purpose, nevertheless new grounds, not included in the statute, may not be engrafted by the courts. (Davis v. Seaward, 85 Misc. 210, affd. 171 App. Div. 963; Truesdell v. Winne, 44 Misc. 451; 32 N. Y. Jur. Judges, sec. 52).
Thus, in People v. Todrick (46 Misc 2d 136) it was held that a Justice of the Peace was not disqualified from presiding at a prosecution for violation of the Vehicle and Traffic Law arising out of an accident between the automobiles of the defendant and the Town Police Department by the mere fact of membership on the Town Board. The words of Judge George P. X. McInerney may be of interest (p. 137): “ His financial interest in the outcome of a possible civil action is so attenuated as to be imperceptible and while his political image might be drastically and irreparably altered by many unforeseen and appar *485 ently unimportant events which later appear as total catastrophes, even the most wary could hardly envision an enraged and disillusioned electorate turning him out of office because of a civil judgment in favor of the defendant. Indeed, a realist might more readily suggest that such a pecuniary victory for the private citizen over an appendage of the featureless municipal octopus would redound greatly to the credit of such a perspicacious and forward looking jurist.”
The case of People v. Kohl (17 Misc 2d 320) upon which the defendant relies, is not controlling. There the defendant was convicted of violating a zoning órdinance and a licensing ordinance of the town by operating motorcycle races on his property. Here the defendant is charged with a violation of the Vehicle and Traffic Law which applies State-wide, not to the town alone. Secondly, in Kohl, the action instituted by the Town Board in Supreme Court had to do with the very matter for which the defendant was convicted, i.e., restraining him from operating motorcycle races on his property. In this case the Supreme Court action is one instituted against the town in connection with the establishment there of the landfill.
True, the defendant is charged here with a violation of the Vehicle and Traffic Law while operating a city-owned truck to the landfill site for the purpose of depositing rubbish there, the very thing which has so distressed the people and the officials of Bush. But I do not see how, unlike Kohl, the defendant’s conviction could have any possible influence, direct or indirect, upon the pending Supreme Court action. There has been no official course of persistent, consistent conduct shown on the part of the town to create Vehicle and Traffic Law violations against city refuse vehicles with the intent of violating the Supreme Court injunction. If anything, such conduct, if shown, would more probably have an adverse effect upon the town’s interest in that action.
Lastly, I know of no authority for another court to review the question of disqualification except for a violation of the prohibitions contained in the Judiciary Law. With all respect, I do not believe that “ circumstances * * * apt to cause prejudice * * * even though the record is barren of any exhibition of partisanship ” (People v. Kohl, supra, p. 321) are sufficient to authorize one court to impose its view of what its ethical obligations are upon another court. The common law did not, as far as I can tell, give this power to the courts. The Judiciary Law, by specifying the conduct prohibited, did not leave room, in my judgment, for another Judge to substitute his views of propriety for those of the Trial Judge.
*486 Accordingly, an application for transfer because of prejudice or bias is addressed to the sole discretion of the presiding Judge. The Court of Appeals has stated the rule as follows: “ of an objection of that character, impropriety as distinguished from legal disqualification, the judge himself is the sole arbiter.” (People v. Patrick 183 N. Y. 52, 54; see, also, Matter of Johnson, 34 N. Y. S. 2d 495, affd. 265 App. Div. 801).
In fact, one old case went so far as to hold that a Judge could not be categorically disqualified for corruption, the remedy being punishment by indictment or removal by impeachment (McDowell v. Van Deusen & Delamater, 12 Johns. 356).
Later, cases have held that even actual bias of a Judge is not a ground for disqualification and does not deprive him of jurisdiction (Matter of Rotwein [Goodman], 291 N. Y. 116; Matter of Fitzgerald v. Wells, 9 A D 2d 812).
In Matter of Rotwein (supra, p. 123), then Chief Judge Lehman, speaking for the court, used this clear, categorical language which leaves no room for any possible doubt: “ Actual bias of a judge is not a ground for disqualification under section 15 of the Judiciary Law [now § 14]. We assume that the statement of counsel to the Trial Judge [as to the Judge’s bias] would not constitute a sufficient ground to disqualify the Trial Judge as matter of law and that the facts alleged even if true would not invalidate as matter of law the decision of the Judge.”
And in Matter of Fitzgerald v. Wells (supra, p. 812) the Third Department, as late as 1959, denied a writ of prohibition against a Surrogate upon his refusal to disqualify himself, and affirmed the determination of the court below which held that such disqualification was entirely discretionary. “ The bias or prejudice of a judge does not deprive him of jurisdcition and is a matter which can only be raised on appeal * * *
This section [Judiciary Law, § 14] sets forth certain situations in which a judge ‘ shall not sit ’ and would therefore appear to deprive the judge of jurisdiction in those situations but a judge’s bias or prejudice does not fall within this section.” (See, also, People v. Owen, 205 Misc. 415, 418; Truesdell v. Winne, 44 Misc. 451, 452.)
The bias or prejudice of a Judge, notwithstanding the absence of statutory disqualification, may be made a ground for appeal (People on Complaint of Watkins v. Lennon, 206 App. Div. 266; People v. Naimark, 154 App. Div. 760). “ In such a ease, the inquiry would be whether there was bias and if it affected the result to the detriment of the one claimed to have been aggrieved; if it did not exist, or if, existing, it did not unjustly affect the result, it would be no ground for a successful appeal. *487 If, on the other hand, bias is shown to have affected the result, the appellate court may order a new trial before another judge. ’ ’ (32 N. Y. Jur., Judges, § 44, p. 396).
The law also provides other means for dealing with and correcting improper judicial behavior (see, e.g., People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290; Matter of Schmidt, 31 A D 2d 214).
Without in any way suggesting to the Rush Town Justices what their proper decision should be iff'asked to disqualify themselves, they might well be guided by the words of Judge William E. J. Cohitor in People v. McDonald (8 Misc 2d 50, 52): “ The question of when a judge should disqualify himself is generally one of conscience. Some judges disqualify themselves only when in their own mind their connection with the case is such that they feel they cannot be fair and unbiased. The practice which impresses me is that a judge should disqualify himself whenever there might be the slightest impression upon the part of a litigant that his decision might be swayed by his connection with the case or his interest in the case, for it is important in the administration of justice not only that our courts be presided over by judges who are fair and impartial, but it appears to this court that it is equally important that litigants believe that they are being tried by a judge who is fair and impartial and not influenced by any personal interest in the case.” (See, also, Van Schaick v. Carr, 159 Misc. 873, 880; People v. Rowley, 48 Misc 2d 26.)
For the reasons stated, the motion is denied.