375 A.2d 911.

VIOLET M. CAVANAGH *vs.* ROBERT D. CAVANAGH.

JULY 15, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

610

PAOLINO, J. This is an appeal by the respondent from a decree entered in the Family Court on May 16, 1975. The parties had been divorced but the case continued as they tried to determine the disposition of certain property standing in their names as tenants by the entirety which was placed in receivership when the divorce decree was entered. After hearings on several motions involving the respective rights of the parties to the real estate in question, the Family Court entered a decree on May 16, 1975, from which the respondent filed the instant appeal.

In September 1954 the parties entered into marriage. This was not the first for petitioner, but she and respondent both believed that her previous marriage had been ended by a final decree of divorce. In fact, a final decree from her previous marriage had never been entered.

In May 1963 the Cavanaghs bought a parcel of real Estate in Little Compton, Rhode Island, consisting of a house and about 50 acres of farm land and other improvements. They moved there with their children and operated the farm. This property is the subject of the present litigation.

The relationship apparently deteriorated and on December 14, 1971, Mrs. Cavanagh petitioned for divorce alleging extreme cruelty. At that time, the Family Court granted her requests to enjoin Mr. Cavanagh from entering the land and from physically abusing her. The court

also granted her custody of the children, use of the home, and an allowance from Mr. Cavanagh. Although these orders have since been the subject of innumerable motions either for amendment or for enforcement, they still to this day essentially govern relations between the parties. The petitioner eventually sought to have the property partitioned by sale.

Mr. Cavanagh at first moved to dismiss the divorce petition because of petitioner's prior marriage. That motion was denied without prejudice and he then filed a motion in the nature of a cross-petition for a decree declaring the marriage void. He also opposed the petition to partition the land saying that property held by tenants by the entirety cannot be partitioned. He later moved to void the deed to the property for fraud and for bigamy.

After a variety of other motions were presented to the court, an interlocutory divorce decree was entered on February 12, 1973. Mrs. Cavanagh's divorce petition was denied and dismissed and Mr. Cavanagh's cross-petition to declare the marriage void was granted. Custody of the children was to be decided at another time. Two receivers were appointed to manage and control the parties' property pending the outcome of the litigation. No appeal was taken by either party.

A final decree was entered on August 8, 1973. Custody was again left open and it appears that nothing permanent has ever been decided as far as the children are concerned. The respondent attempted to appeal from this final decree, but his appeal was denied on February 28, 1974, *Cavanagh v. Cavanagh*, 112 R.I. 946, 315 A.2d 757 (1974).[1]

Following the divorce decree, the litigation focused on

---

[1] Counsel for the respondent has indicated to us that another appeal was taken on December 20, 1973. We believe that he is referring to the filing date of the appeal for which notice was given on August 29 and that, in fact, only one appeal was pending at that time.

the rights of the parties in the estate. The receivers sought court permission to sell the property, as they had since shortly after their appointment in February 1973. The petitioner joined in this request, saying the family needed the money to meet expenses.

The respondent, on his part, sought to reverse everything the court had ordered, particularly the receivership, and he also sought to have the trial justice disqualified for alleged bias and misconduct.

During 1974, the Family Court heard arguments concerning the disposition of the real estate. On February 7, 1975, the trial justice filed his decision. As stated in that decision, the court found that petitioner had practiced no fraud in attempting to enter into marriage with respondent. Both of them had believed her divorce had been final and Mrs. Cavanagh had not intentionally concealed any facts from Mr. Cavanagh. Although a legal marriage had never existed because of the prior marriage, the court said a "de facto marriage" had arisen after all the years they have lived and worked together.

The court found that the estate had been enhanced by the joint efforts of the parties. Since no fraud was proven, the court rejected respondent's contentions that petitioner should be denied any rights in the property or that a constructive trust should be imposed on her share of the estate and he refused to remove the restraints placed on the property. The court concluded that petitioner owned her share of the property as a tenant in common with respondent. The judge refused to rescind the receivership and he ordered the coreceivers and cocommissioners to carry out their duties. Finally, the judge refused to disqualify himself as requested by respondent.

On March 6, 1975, the trial justice entered an order for the receivers and commissioners to appoint two appraisers for the property and to present their appraisals to the

**614**

court for instructions. On the same day, respondent filed a notice of appeal from that order and from the February 7, 1975 decision.[2]

On May 16, 1975, the court entered its decree embodying the decision of February 7. The respondent, on that same day, filed notice of appeal from that decree and it is this appeal which is presently before us.[3]

The respondent raises two issues on appeal which he raised by motion and argument below: that the Family Court was without jurisdiction to try title to the land, and that the trial justice was biased. He raises two other issues for the first time in this appeal: that his former attorneys should be disqualified from acting as receivers, and that any actions taken by the court while sitting in Providence instead of Newport are void, because the provisions of G.L. 1956 (1969 Reenactment) §15-5-13, as amended by P.L. 1969, ch. 65, §1 on changing venue in divorce actions were not complied with.

By motion filed in this court on February 16, 1977, respondent also argued that the Family Court had no jurisdiction to act after August 29, 1973, when he appealed from the final divorce decree, and from June 23, 1975, when he filed a petition for removal in Federal District Court, until January 21, 1976, when the Federal District Court remanded the matter to the Family Court. Al-

---

[2]The respondent later filed a motion in this court to restrain the sale of the land and to allow him to enter the property for maintenance work. We denied this motion on procedural grounds, *Cavanagh* v. *Cavanagh,* 115 R.I. 962, 351 A.2d 106 (1976). After the Family Court actually authorized sale of the estate (in March and April 1976), we did order a stay, *Cavanagh* v. *Cavanagh,* R.I., 357 A.2d 451 (1976). That stay is still in effect.

[3]Despite the respondent's filing an appeal, the court and all concerned parties continued to act on this matter as if jurisdiction were still fully in Family Court. As a result, a number of actions were taken after May 16 and those actions have led to subsequent appeals which are now pending before this court.

though respondent did not raise these questions below, jurisdictional defects are not waived by the failure of the parties to raise them timely. *See Beacon Milling Co.* v. *Whitford,* 92 R.I. 253, 258, 168 A.2d 279, 281 (1961). In this opinion, however, we consider only jurisdictional issues which may affect those actions taken before May 16, 1975, the date of entry of the decree being appealed here. We leave to a later appeal, if any, the question of the Family Court's jurisdiction to act after May 16, 1975, when this present appeal was pending (see note 3 *supra*). We also leave until the appropriate appeal respondent's contention that the court erred in exercising jurisdiction while his petition for removal was pending in Federal District Court. Because that petition was filed after May 16, it did not affect the decree now on appeal.

As far as our own jurisdiction in this case, we believe the decree determining the property rights of the parties has such elements of finality that it is properly before us at this stage of the litigation. *McAuslan* v. *McAuslan,* 34 R.I. 462, 472, 83 A. 837, 841 (1912).

I. Family Court Jurisdiction Pending Appeal

The respondent seeks first to vacate all orders entered by the Family Court after August 29, 1973. His contention is that upon his filing a notice of appeal from the divorce decree entered on August 8, the case was removed from Family Court jurisdiction to Supreme Court jurisdiction and any subsequent orders by the Family Court were void.

We note first, as we did above, that respondent's appeal from that final decree was denied in February 1974 so that only actions taken during the period from August to February are at issue. Second, the decree entered on August 8 was a final divorce decree which was not reviewable upon appeal, G.L. 1956 (1969 Reenactment) §14-1-52, as amended by P.L. 1972, ch. 169, §28; *see also DeLuca* v.

616

*DeLuca,* 72 R.I. 34, 47 A.2d 915 (1946), so that the cause in divorce was not properly brought before us and we were without jurisdiction to review it, *see Tobin* v. *Tobin,* 70 R.I. 362, 370, 38 A.2d 756, 760 (1944). Jurisdiction therefore remained in the Family Court throughout the period in question.

Similarly, respondent's notice of appeal of March 6, 1975, did not remove the case from Family Court jurisdiction.[4] The attempted appeal was taken from two actions of the court. First was the February 7 decision of the court which was not reviewable until embodied in a decree on May 16 (which decree is presently on appeal). *Culpepper* v. *Martins,* 96 R.I. 328, 331, 191 A.2d 285, 287 (1963); *see also Poirier* v. *Poirier,* 107 R.I. 345, 350 n.1, 267 A.2d 390, 393 n.1 (1970); *Botelho* v. *Botelho,* 96 R.I. 379, 380, 192 A.2d 5, 6 (1963).

The second was a decree entered on March 6 ordering the receivers and commissioners to appoint two appraisers. That decree also was not reviewable. It was not final and did not come within either the statutory exceptions, §9-24-7, or the common law exception, *McAuslan* v. *McAuslan, supra,* to the rule that only final decrees are reviewable, §14-1-52, as amended by P.L. 1972, ch. 169, §28.

Thus, because the March 6, 1975 appeal was premature and the August 29, 1973 appeal was too late, jurisdiction did not vest in this court before May 16, 1975. The Family Court, then, had jurisdiction over this case when it entered the decree which is now on appeal.

II  Jurisdiction to Settle the Property Dispute

The respondent argues that in the decree of May 16 the Family Court justice exceeded his statutory jurisdiction by settling a dispute over title to real property. The re-

---

[4]Although the respondent has not raised this particular issue, where a question of jurisdiction is involved, we may raise it sua sponte. *Beacon Milling Co.* v. *Whitford,* 92 R.I. 253, 258, 168 A.2d 279, 281 (1961).

spondent thus seeks to vacate that part of the decree which said that petitioner owned an interest in the property concurrently with him.

The property in question was conveyed to the parties in 1963 by a quitclaim deed which granted the estate "for consideration paid" to "Robert D. Cavanagh and Violet M. Cavanagh, of Little Compton, Rhode Island, husband and wife as tenants by the entirety * * *."

On February 12, 1973, when the Family Court declared the marriage void, it appointed two receivers to "manage and control" the estate during the litigation, but said nothing in its decree about the respective rights of the parties in the real estate. It is clear, however, that since the marriage was void, a tenancy by the entirety never existed. 4 Thompson, *Real Property* §1786 at 66 (Grimes repl. 1961).

After a number of motions were filed by the receivers and by petitioner to sell the property, the court, in July 1974, heard arguments on its jurisdiction to partition real estate and on the rights of each party in the Little Compton estate. Memoranda were filed and on February 7, 1975, the decision was filed. As discussed above, the court concluded, among other things, that petitioner owned a share of the property as a tenant in common with respondent.

As previously stated, this decision was embodied in the decree of May 16, 1975, which is presently on appeal.

The respondent assigns as error the court's assumption of jurisdiction to determine that petitioner was entitled to a share in the property as a cotenant. He contends that the limited jurisdiction given to the Family Court in §8-10-3 does not include the power to try title or to reform or cancel deeds. He argues that before Family Court can proceed to partition the land, the question of title must be decided in Superior Court.

On this record the Family Court had jurisdiction to order partition of the subject property. Under §8-10-3, as amended by P.L. 1972, ch. 30, §1, that court had the authority, when this petition to partition was filed,

> "* * * to hear and determine all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trusts, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce * * *."

It is clear from the record in this case that title to the real estate in question was incidental to and subordinate to the divorce action which had been brought by the parties. In these circumstances the Family Court had jurisdiction. As the court said in *Butler* v. *Butler,* 377 Pa. 388, 390-91, 105 A.2d 62, 63 (1954):

> "The fact that ejectment might lie to settle title to real estate does not *necessarily* oust the jurisdiction of equity. In Sears v. Scranton Trust Company, 228 Pa. 126, 77 A. 423, Justice Moschzisker (later Chief Justice), said:

> '. . . Whatever may be the prayer of a bill, if the kernel of the controversy is the legal title to land, then equity cannot be invoked; but, where the question of the legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction * * *.'"

Such "other elements" were present in the case at bar and, therefore, as previously stated the Family Court did

not lack jurisdiction to order the partition. *Accord, Potts* v. *Rader*, 215 Ark. 160, 162, 219 S.W.2d 769, 770 (1949).[5]

### III.  Venue of the Hearings

The record indicates that this case was filed in Newport County and was, for the most part, heard in that county. Apparently however, some of the hearings were held in Providence County. The respondent contends that it was error to hear any of the case in Providence because the provisions of §15-5-13 were not complied with. He raises this objection for the first time here on appeal.

Section 15-5-13 is entitled "Venue" and states that divorce petitions shall be filed, heard and tried in the county in which the petitioner resides (with some exceptions not relevant here). The section provides that "in the interest of convenience, the court may with the consent of the chief judge or any associated justice designated by him and the parties, order any such action transferred to another county." The respondent argues that the requisite consent does not appear on the record and that all actions taken in this case should therefore be vacated.

We find respondent's contention to be without merit. Both parties in the litigation gave their implied consent to the change of venue by appearing generally in the proceedings, participating fully in the hearings, and failing to raise an objection to the change. *Fiorino* v. *Fiorino*, 35 N.J. Super. 463, 468, 114 A.2d 480, 483 (Juv. & Dom. Rel. Ct. 1955); *see also Mateer* v. *Mateer*, 105 R.I. 735, 742, 254 A.2d 417, 421 (1969). Although there is no specific order in the record showing consent by the court itself, we believe it is clear that when the trial justice moved to

---

[5]Whether jurisdiction over the property rights of two parties remains in Family Court after a petition for divorce filed by one of them is dismissed is not before us. The court here had an independent source of jurisdiction in respondent's own petition to declare the marriage void, G.L. 1956 (1969 Reenactment) §15-5-1.

Providence on his usual rotation, everyone involved agreed that the case should follow him so that continuity could be maintained. Considering the confusion that would have ensued if a different judge had tried to step into the middle of this case, we believe the most convenient way to handle the matter was to have one judge preside over it even when he was sitting in Providence. We do not read §15-5-13 as preventing a case from following a judge when he moves to another county on his usual rotation and when both of the parties implicitly consent to the change.

The respondent relies on *Salters* v. *Salters,* 72 R.I. 81, 48 A.2d 359 (1946). In that case, a divorce action was filed in the wrong county and we held that it could not be heard in that court. Here, however, the case was filed in the proper court so that the judge at Newport County had authority to hear it.

We will not vacate any of the court's actions on this ground.

### IV.   Prejudice of the Trial Justice

The respondent's next assignment of error is the failure of the trial justice to disqualify himself for bias and prejudice. In the course of the trial, respondent made two motions to the effect that the trial justice's comments and rulings at trial exhibited a state of mind such that he could not give respondent a fair hearing. The argument here on appeal seems to be that not only did the judge err in denying the original motions, but that actual events substantiated the fears of respondent and he was, in fact, denied a fair hearing and should be given a new one. Presumably, we are also being asked to determine that the judge should be disqualified from any future role in this case.

Regardless of whether respondent is seeking prospective or retrospective relief, *cf. Knapp* v. *Kinsey,* 232 F.2d 458,

465-66 (6th Cir.), *cert. denied*, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956) (standard for disqualifying a judge for bias appearing during a trial is the same as that for disqualifying him before trial under the federal statute on pretrial bias), and without deciding whether we have the common law power to disqualify a judge for bias when no showing is made that he has an actual interest in the case, *see, e.g., People* v. *Capuano*, 68 Misc.2d 481, 485-86, 327 N.Y.S.2d 17, 23-24 (Monroe Cty. 1971); *People* v. *Owen*, 205 Misc. 415, 418, 128 N.Y.S.2d 602, 605 (Schenectady Cty. 1954), we hold that the facts of this case do not support respondent's allegations of bias and prejudice on the part of the trial judge.

The respondent's motions to disqualify cite instances when the trial justice criticized his mode of dress and his complaints to the court and to government officials. We have not been supplied a transcript of that particular hearing, but we do have a transcript of another hearing during which the judge commented on respondent's numerous lawyers and on his chewing gum in court. Some heated exchanges during that hearing eventually led to the judge's calling respondent a "sick man" and saying he needed psychiatric help. The court finally held respondent in contempt of court and had him removed until he apologized for some comments he had made.

One of respondent's motions to disqualify also cites an earlier hearing at which other heated exchanges took place. That transcript also is not before us and therefore we cannot consider it.

In order to obtain the relief he desires, respondent must establish affirmatively that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment. *State* v. *Buckley*, 104 R.I. 317, 322, 244 A.2d 254, 257 (1968); *Kelley*

v. *City Council*, 61 R.I. 472, 482, 1 A.2d 185, 189 (1938). He must show that in light of all the facts and circumstances appearing in the record, one can reasonably infer from the conduct of the judge that he was unable to render an impartial decision in this case. *State* v. *Nunes*, 99 R.I. 1, 5, 205 A.2d 24, 27 (1964); *Kelley* v. *City Council supra* at 481-82, 1 A.2d at 189.

The record shows the judge's irritation and impatience at respondent's behavior and the judge's indignation at what he conceived to be unfair criticism of his handling of the case. These comments, however, though heated at times, do not show prejudice against respondent, *see Nelson* v. *Dodge*, 76 R.I. 1, 11, 68 A.2d 51, 56-57 (1949); *Reilley* v. *Kinkead*, 181 Iowa 615, 620, 165 N.W. 80, 81 (1917), and the fact that the comments were critical of respondent does not alone indicate prejudice, *United States* v. *Orbiz*, 366 F. Supp. 628, 630-31 (D.P.R. 1973).

Despite the comments made to Mr. Cavanagh, it would be unreasonable to infer that the trial justice had closed his mind to respondent's side of the case, *Nelson* v. *Dodge*, *supra* at 11, 68 A.2d at 56, particularly since the comments only concerned respondent's behavior and had no relation to the actual issues being tried, *see Dupraw* v. *Dupraw*, 69 R.I. 144, 146-47, 31 A.2d 474, 475-76 (1943). There is no indication that respondent was unable to present his case in full, *Nelson* v. *Dodge*, *supra; Killilea* v. *United States*, 287 F.2d 212, 217-18 (1st Cir), *cert. denied*, 366 U.S. 969, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961), and the judge's decision indicates that all issues raised by respondent were, in fact, heard and considered fully, *see Nelson* v. *Dodge*, *supra* at 11-12, 68 A.2d at 56-57; *Dupraw* v. *Dupraw*, *supra* at 147, 31 A.2d at 476.

The respondent's other claims of prejudice have to do with certain rulings and actions of the court. One is that the trial justice engaged in ex parte discussions with peti-

tioner's counsel. The only such instance referred to in the record was, as explained to the satisfaction of respondent's counsel at the time, a meeting to assign the case for hearing. There was no judicial misconduct there since the merits of the case were not discussed, and the meeting was not for the purpose of influencing judicial action, *see* Sup. Ct. R. 48, Canon 15. Such conferences on housekeeping items show neither a prejudicial state of mind nor a denial of a fair hearing. *Craven v. United States,* 22 F.2d 605, 607 (1st Cir. 1927), *cert. denied,* 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928); *see also United States v. Valenti,* 120 F. Supp. 80, 87 (D.N.J. 1954).

The respondent has alleged that other ex parte actions and secret orders indicate a prejudicial state of mind. In one of his motions, he cites rulings on visitation rights and several orders continuing the case, but he has not even shown that these actions were erroneous, *See Baylor v. United States,* 360 A.2d 42, 45 (D.C. 1976). Nonetheless, even if legally incorrect, *Curtis v. United States,* 91 F. Supp. 206, 208 (D.N.J. 1950); *Estate of Buchman,* 132 Cal. App.2d 81, 102-04, 281 P.2d 608, 622-23, *cert. denied,* 350 U.S. 873, 76 S.Ct. 118, 100 L.Ed. 772 (1955), adverse rulings alone do not show prejudice on the part of a trial judge, *Knapp v. Kinsey, supra* at 466; *Leonard v. Willcox,* 101 Vt. 195, 215, 142 A. 762, 771 (1928); *Wright v. Mathias,* 128 A.2d 658, 660 (D.C. 1957), and the record does not disclose any particular ruling, order, or act on the part of the court that was inherently unfair or hostile to respondent, *State v. Nunes, supra* at 6, 205 A.2d at 27.

In view of all the circumstances of this case, then, we believe there is no support for respondent's contention that the trial justice should have disqualified himself or should be barred from any future role in this case or that respondent should be given a new hearing.

## V. Disqualification of Two Receivers

The contested real estate is presently under the management of four receivers who have also been commissioned to sell the property in order to partition it. Two of them, as we indicated above, were appointed by the court at the time it created the receivership, February 12, 1973, when it granted the interlocutory divorce decree. These receivers were petitioner's attorney and respondent's attorney.

The respondent's attorney subsequently withdrew as counsel but remained as a receiver, and respondent's next attorney was evidently also appointed a receiver. There is no record of the order by which he was appointed, but a bond submitted on April 28, 1975 does refer to three commissioners for the sale of the property and everyone involved in the case seems to accept the fact that by that time respondent's new attorney was a third receiver. This attorney, too, has since withdrawn as counsel yet continues to act as a receiver.

The petitioner also changed attorneys after the original appointments were made. Her first attorney is still a receiver and her present attorney was appointed on October 17, 1975, pursuant to petitioner's motion, in order to counterbalance respondent's second receiver.

The respondent argues that the two receivers who are former attorneys of his should be removed as receivers and any attorney who has represented him in this case should be disqualified from acting as a receiver. He contends that since these receivers are petitioning the court to sell the property, they are taking a position contrary to that which they argued while representing him and by doing so in the same case, they are violating their ethical duty to him as a former client.

In Family Court respondent sought generally to have the receivership rescinded, but he did not seek to remove or replace these two receivers. He raises this question of removal for the first time here on appeal.

It is generally considered a matter for the discretion of the court imposing the receivership to decide who should be appointed as receiver, *Wax* v. *Monks,* 327 Mass. 1, 3-4, 96 N.E.2d 704, 706 (1951); 1 Clark, *The Law and Practice of Receivers,* §113 at 165 (3d ed. 1959), and to decide, once a receiver has been appointed, whether he should be removed, *First Nat'l Bank* v. *E.T. Barnum Wire & Iron Works,* 60 Mich. 487, 499, 27 N.W. 657, 661 (1886); *Flinn* v. *Hanbury,* 157 App. Div. 207, 208, 141 N.Y.S. 844, 844 (1913); *Lasell* v. *Yankton Cty.,* 69 S.D. 66, 67-68, 6 N.W. 2d 439, 440 (1942).

As we have stated in other contexts, this court will not lightly undertake to review an exercise of judicial discretion on the part of a trial court. Such an issue will be raised only on an objection that is properly taken to a ruling by the trial court on a motion clearly and expressly stated. *Manekofsky* v. *Baker,* 92 R.I. 377, 380, 169 A.2d 376, 378 (1961); *accord, State* v. *Ouimette,* 110 R.I. 747, 766, 298 A.2d 124, 136 (1972).

In the case before us now, there is no reason for us to make an exception to this rule. Although respondent contends that these attorneys are acting unfairly and unethically toward him, there is no evidence of any actual impropriety or conflict of interest on their part. Had respondent made a motion in the court below to remove or replace the receivers, he could have presented to the court any specific factors which would actually warrant removal of these receivers. The trial justice could then have considered the motion and the evidence as part of his supervision of this receivership and he would have made a ruling that could have been the subject of a valid exception.

We, in turn, would have had a record to examine and a decision to review to determine if the court exercised its discretion properly in allowing the attorneys to continue as receivers after withdrawing as counsel. As matters stand now, however, we have no such ruling and no exception under which we are required to review the court's discretion. *Manekofsky* v. *Baker, supra.*

We are aware that in some cases involving objections to attorneys' representing adverse parties against former clients, courts have considered the question even though the objecting party delayed in raising the issue. *E.g., Emle Indus., Inc.* v. *Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir. 1973); *Fleischer* v. *A.A.P., Inc.,* 163 F. Supp. 548, 559 (S.D.N.Y. 1958), *appeal dismissed sub nom. Fleischer* v. *Phillips,* 264 F.2d 515 (2d Cir.), *cert. denied,* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); *Empire Linotype School, Inc.* v. *United States,* 143 F. Supp. 627, 631 (S.D.N.Y. 1956). Furthermore, in the oft-cited case of *Peirce* v. *Palmer,* 31 R.I. 432, 77 A. 201 (1910), this court defined the rule that once an attorney has acted for a client in a matter, he cannot thereafter take a position in the same matter that is hostile to his former client.

Unlike those cases, however, the present situation does not involve an attorney who withdraws as counsel in a case and then, in the same matter, represents an adverse party. Although the receivers have acted contrary to respondent's wishes in seeking permission to sell the property, they have not attempted to promote one party's claims or the other's. They have taken no position on whether Mrs. Cavanagh has any rights in the estate or on how the proceeds of the sale of the property should be divided. As officers of the court, the receivers are obliged to assist the court in protecting the estate during the litigation and in disposing of the property pursuant to the court's decision. By acting as receivers, these attorneys

serve the court and do not represent any particular party. They are therefore not taking a hostile position vis-à-vis their former client and are not breaching their professional responsibility toward him. *See American Nat'l Bank* v. *Bradford*, 28 Tenn. App. 239, 188 S.W.2d 971, *cert. denied* (1945); *in re Coulter's Estate*, 406 Pa. 402, 178 A.2d 742 (1962).

We therefore deny the respondent's request that his former attorneys be disqualified from acting as receivers.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Family Court for further proceedings.

*Breslin, Sweeney & Gordon, Robert H. Breslin,* for petitioner.

*George Ajootian, Esq.,* for respondent.