Charles G. TATE, Jr.

v.

Abraham SCHWARTZ.

No. 84-44-Appeal.

Supreme Court of Rhode Island.

June 27, 1986.

---

Denis S. Baluch, Jacob D. Portnoy, Rustigian Rosenfield Portnoy & Nasif, Providence, for plaintiff.

Thomas D. Gidley, Gidley Lovegreen & Sarli, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action for negligence to recover damages for injuries sustained as a result of alleged faulty dental treatment. The case was tried before a justice of the Superior Court sitting with a jury. The cause is before us on the plaintiff's appeal from a Superior Court judgment granting the defendant's motion for a directed verdict.

The record reveals the following facts. The plaintiff was a patient of Dr. Abraham Schwartz for a period exceeding ten years, during which time plaintiff made over one hundred visits to defendant for dental treatment. The plaintiff first consulted defendant in May 1966 because of inflamed gums and problems with caps which had been placed on plaintiff's teeth by another dentist. At this time, a course of action was planned which included root canals, gum work and the installation of "roundhouses"[1] in plaintiff's upper and lower jaws.

Initially, Dr. Schwartz installed a roundhouse in plaintiff's upper jaw, which was followed by the preparation and installation of a roundhouse for plaintiff's lower jaw. By April 1967, the final caps were installed. The plaintiff testified that approximately one month later, in May 1967, he first began to experience problems with the splints. Over the next several years, plaintiff complained of looseness, mouth pain, continuous bad taste and foul odor. Despite these problems, plaintiff continued to treat with Dr. Schwartz, who from time to time removed the caps and recemented them.

---

1. According to testimony adduced at trial, a "roundhouse" is "a multiple unit bridge which goes from one side of the jaw all the way around to the other." A "bridge" is "a form of dental prosthesis which replaces one or more lost or missing teeth, being supported and held in position by attachments to adjacent teeth." Dorland's Illustrated Medical Dictionary 219 (24th ed. 1965).

On June 17, 1971, plaintiff appeared at defendant's dental office complaining of odor and bad taste in the upper right portion of his jaw. Doctor Schwartz tried unsuccessfully to remove the roundhouse. The defendant testified that he decided at that time that the potential positive results stemming from the removal of the roundhouse were outweighed by the possibility that in doing so tooth fracture might result.

The plaintiff testified that he continued to experience pain, odor, bad taste and looseness until October 1977, at which time Dr. Glen Sutton removed the upper splint in plaintiff's jaw. The plaintiff also stated that Dr. Sutton recommended that further extensive dental work be undertaken. Consequently, substantial endodontic, periodontic and prosthodontic work was performed by Doctors Watkin, Peiser, Mellion and Metzger, plaintiff stated.

After due deliberations, the jury notified the court that it could not agree on a verdict. After being so informed, the trial justice, who had reserved decision on defendant's motion for a directed verdict, directed a verdict in favor of defendant. The main issue on appeal is whether the trial justice was correct in applying the inherent-improbability rule as a basis for granting defendant's motion for a directed verdict.

I

The plaintiff's main expert witness at trial was Dr. Michael Brennan. Although the witness testified that he never installed a "roundhouse" in a patient, he did state that he had significant experience in the design and installation of multiple-unit arches.[2]

This court has been on numerous occasions confronted with the question of whether a purported expert is competent to testify on a given issue. In *Lantini v. Daniels*, 104 R.I. 572, 578, 247 A.2d 298,

301 (1968), we addressed the issue of whether a city physician who lacked training or experience in the field of psychiatry was nonetheless competent to testify on the issue of whether there was merit to the plaintiff's claim that he was unable to return to police work because of his mental condition. There, we noted that while the doctor's lack of training or experience in psychiatry might affect the weight accorded his testimony, it would not affect the doctor's competency to testify. *Id.* Moreover, in *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1977), we countenanced the admissibility of a doctor's testimony regarding the medical profession's standard of care even though he was a specialist in cardiology and not in hospital administration or emergency-room care. There, we noted that while the witness's lack of expertise in hospital administration might affect the weight given his testimony, it would not affect his competency to testify. *Id.* at 521, 382 A.2d at 520.

In the instant case, the trial justice concluded at the end of trial that Dr. Brennan's testimony was improbable and lacking in probative value for two reasons. First, he determined that the witness had no expertise in the dental procedure at issue and thus had no basis upon which to second-guess defendant's decision not to remove the splint in June 1971. Second, the trial justice cited the fact that Dr. Brennan's opinion on whether the degree of care was deficient was based on events which occurred after June 1971. We find no merit to the trial justice's conclusions.

Although the trial justice was correct in noting that where testimony is inherently improbable, he need not view the evidence in the light most favorable to the nonmoving party, *see Economou v. Valley Gas Co.*, 112 R.I. 514, 312 A.2d 581 (1973) (court may direct verdict for defendant where

2. According to Dr. Brennan's testimony, a roundhouse is a form of multiple-unit bridge. He stated that over the course of his dental practice he had installed "possibly a hundred" multiple-unit bridges.

positive testimony otherwise unimpeached is inconsistent or improbable), the fact remains that the testimony must be improbable when viewed in light of all the other evidence in the case. Here, Dr. Brennan testified that defendant failed to exercise the standard of care of the average dentist in Rhode Island by failing to remove the splint on June 17, 1971. The fact that Dr. Brennan never installed a roundhouse or relied on events which occurred after June 17, 1971, might very well affect the weight of his testimony, but it does not render it inherently improbable.

Doctor Brennan's conclusion, simply stated, was that where a patient complains of odor and bad taste, it is incumbent upon the treating dentist to remove the splint, and by failing to remove the splint defendant failed to exercise reasonable care. This testimony, when viewed in light of the testimony given by Doctors Sutton and Watkin,[3] does not seem to be so unreasonable and lacking in probative value as to make it inherently improbable or contradictory.

■ We further do not agree with the trial justice, that Dr. Brennan's testimony was inherently improbable because he relied in part on events occurring subsequent to June, 1971 when forming an opinion as to the degree of care exercised on behalf of plaintiff. Although Dr. Brennan's consideration of post-June 17, 1971 events should be taken into account by the trier of fact when forming a decision as to whether defendant was negligent on that particular day, the fact that an expert witness had the benefit of hindsight does not in and of itself render that opinion testimony inherently improbable. The testimony of witnesses who took the stand after Dr. Brennan tended to corroborate his opinion that defendant's failure to remove the splint on June 17, 1971, demonstrated a lack of reasonable care. Moreover, there were no apparent contradictions or inherent improbabilities in Dr. Brennan's testimony. Consequently, the trial justice erred in applying the inherent-improbability rule and failing to view the evidence in the light most favorable to plaintiff.

■ The plaintiff also contends that the trial justice erred by sustaining defense counsel's objections to five hypothetical questions posed to Dr. Brennan. The questions addressed incidents of malpractice which allegedly occurred on June 24, 1971; January 9, 1975; July 7, 1975; May 7, 1976; and February 17, 1977. It is settled law in this jurisdiction that the admission of a hypothetical question rests within the sound discretion of the trial justice. *Tavernier v. McBurney*, 112 R.I. 159, 161, 308 A.2d 518, 520 (1973). We have stated that we "will not lightly undertake to review an exercise of judicial discretion on the part of a trial court[,]" *Cavanagh v. Cavanagh*, 118 R.I. 608, 625, 375 A.2d 911, 919 (1977), and that "a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof * * *." *Berberian v. Travisono*, 114 R.I. 269, 273–74, 332 A.2d 121, 124 (1975).

■ The trial justice excluded the hypothetical questions at issue because they lacked proper foundations. Our review of the record in general and of these questions in particular does not evince an abuse of discretion on the part of the trial justice sufficient to disturb his rulings on appeal.

Accordingly, the plaintiff's appeal is denied in part and sustained in part; the judgment appealed from, insofar as it relates to the exclusion of the five contested hypothetical questions, is affirmed, but in all other respects the appeal is sustained; and the case is remanded to the Superior Court for further proceedings.

---

**3.** Doctor Glenn A. Sutton, a practicing dentist with an office in North Providence, Rhode Island, testified that during an examination of plaintiff's teeth he discovered foul odor, loose crowns, and disintegration and deterioration of the cement between crown and tooth. Doctor Arnold Watkin, a prosthodontist, examined plaintiff in December 1978 and January 1979. He testified that he found a loose splint, which he removed and recemented. He also testified that a loose bridge can cause bad taste and odor.