270 A.2d 520.

OPINION TO THE GOVERNOR.

NOVEMBER 5, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

ADVISORY OPINION TO GOVERNOR as to validity of act relating to Water Resources Coordinating Board, in answer to request submitted in the form of a question.

November 2, 1970

To His Excellency, Frank Licht
    Governor of the State of Rhode Island
        and Providence Plantations

We are pleased to reply to Your Excellency's request for our written opinion as to the validity of an act of the General Assembly, which request was made pursuant to the provisions of article XII, section 2, of amendments to the constitution of this State.

The question specifically asked by Your Excellency is as follows:

> "May the Rhode Island Water Resources Board issue bonds pursuant to H 2102 Substitute A, entitled 'An Act Authorizing the Water Resources Board to Issue Revenue Bonds for Water Supply Purposes', in excess of $50,000 without a vote of the people under Article 31 of the Amendments to the Rhode Island Constitution, where the bonds are issued for a project, or are issued at one time for a group of projects, and both the principal and interest on the bonds and the current expenses of such project or projects are to be paid solely from the funds derived from the ownership and operation of such project or projects?"

Section 1 of article XXXI of amendments to the constitution of this State provides in pertinent part:

> "The general assembly shall have no powers, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion * * *."

By the enactment of P. L. 1955, chapter 3562, now G. L. 1956, chapter 15 of title 46, as amended, the General Assembly created a state Water Resources Co-ordinating Board which consisted of seven members to be appointed

by the Governor as provided by the Act. As originally created, said Board was designed to preserve and co-ordinate water supplies in or available to this State, but its duties were advisory in nature. However, with the enactment of P. L. 1967, chapter 156, said Board was renamed "Water Resources Coordinating Board," its membership expanded to nine, and its duties, functions and powers drastically expanded and changed.

Significant among such expanded powers are the provisions of subsections (a), (b) and (g) of section 6, G. L. 1956, chapter 15 of title 46, as amended by said P. L. 1967, chapter 156, section 1. These provisions are as follows:

"(a) To acquire, within the limitation of funds therefor, the sites, appurtenant marginal lands, dams, waters, water rights, rights of way, easements, and other property or interests in property for reservoirs and for such pipe lines, aqueducts, pumping stations, filtration plants and auxiliary structures as may be necessary or desirable for the treatment and distribution of water from any such reservoirs. Lands acquired under the provisions of this section shall be acquired with the approval of the governor by purchase, gift, devise, or otherwise on such terms and conditions as the board shall determine, or by the exercise of eminent domain, in accordance with the provisions of chapter 6 of title 37 of the general laws, as amended, insofar as the same are consistent with the provisions hereof. The power of acquisition and condemnation herein granted shall not apply to any property or property rights owned, possessed or used by a municipality or any agency thereof for water supply purposes, as hereinbefore described."

"(b) To construct or purchase water reservoirs, wells and well sites, processing facilities, transmission or distribution systems, and other facilities except those owned, possessed or used by a municipality or any agency thereof necessary to accomplish the purposes of this chapter and to implement its plans and program if no municipal water agency or department,

special water district or private water company is able or willing to construct or otherwise provide such facilities; provided, however, the board is authorized to lease any reservoir sites or other facilities it may have acquired or constructed in accordance with this section to any municipal agency or department or special district if such agency, department or special district indicates its willingness and ability to construct or administer such facilities by submitting its plans to construct, administer and finance such facilities to the board in the form and time specified by the board in accordance with §46-15-7. Any such lease shall contain such terms and conditions as shall be authorized by the board and approved by the state properties committee, purchasing agent, and director of administration, as provided in §37-7-9 of the general laws, except that the term of the lease shall not be limited by said §37-7-9."

"(g) To make loans to publicly owned water supply agencies for acquisition of land, construction, or purchase or installation of equipment or pipes, from funds which may be appropriated for this purpose by the general assembly, from bonds issued for this purpose, or from other funds which may become available to the board for this purpose. No loans shall be made for purposes of installing, improving, or extending local distribution systems unless the board requires such a system to contain a greater capacity than immediately necessary in order to provide water for other municipalities at a later date in accordance with §46-15-7 hereof."

Presumably for the purpose of effectuating the afore-quoted powers of the Board among others, the General Assembly further amended G. L. 1956, §46-15-1, as amended, by enacting P. L. 1970, chapter 304. It is the constitutional validity of portions of this later amendment to which Your Excellency focuses our attention and requests our written opinion thereon, specifically now cited G. L. 1956, §46-15.1-5(h). It provides:

"(h) to borrow money and issue its bonds and notes as hereinafter provided."

In definitive furtherance of the foregoing P. L. 1970, chapter 304, now cited as G. L. 1956, §46-15.1-10, sets forth the manner, method and conditions applicable to the issuance of revenue bonds as authorized by said §46-15.1-5(h), mere reference to which is sufficient for our purposes here. Suffice it to observe that said §46-15.1-9 makes abundantly clear that the debtor obligation resulting from the issuance of revenue bonds or any other borrowing is exclusively that of the Water Resources Board.

The answer to Your Excellency's specific question, therefore, is to be found in the legal status of the Board. An examination of P. L. 1970, chapter 304 in this regard focuses our attention on now cited §46-15.1-2. It provides in pertinent part:

> "Designation of water resources board.—The water resources board is designated to carry out the provisions of this chapter. In exercising its powers under this chapter the board shall constitute a body politic and corporate and a public instrumentality of the state *having a distinct legal existence from the state and not constituting a department of the state government * * *.*" (emphasis ours)

From the foregoing, it is our opinion that in authorizing the Water Resources Board to issue bonds and otherwise borrow money, the General Assembly was careful to exclude from that indebtedness of the state contemplated by article XXXI, section 1, of amendments to the Rhode Island constitution, any debt incurred by said Board.

Indeed, by the provisions of §46-15.1-13 as enacted by P. L. 1970, chapter 304 explicitly provides that the remedy of any creditor of the Water Resources Board is by way of a civil action against said Board.

In *Blais* v. *Franklin*, 31 R. I. 95, 77 A. 172, this court was concerned with what constituted a state debt within

the meaning of then article 4, section 13, of the Rhode Island constitution, now article XXXI, section 1 of amendments to said constitution. There an act of the Legislature created a commission to supervise the construction of a bridge connecting the cities of Pawtucket and Central Falls, as well as apportioning the cost between the two cities. The contention was made, in essence, that because the municipalities were political sub-divisions of the state, the indebtedness incurred in construction of the bridge was an indebtedness of the state which required the consent of the people. No such consent having been obtained, it was argued that the Act was constitutionally obnoxious.

In holding such contention to be without merit, this court made clear that a debt incurred by an otherwise valid act of the Legislature, which debt was expressly made the obligation of another, was not a state debt within the meaning of the constitutional limitation on the legislative power.

Hence we have no hesitancy in concluding that when the Water Resources Board exercises the borrowing power conferred on it by the provisions of P. L. 1970, chapter 304, any resulting obligation is an indebtedness of the Board and is in nowise a state debt within the meaning of article XXXI, section 1, of amendments.

Consequently, we are united in the opinion that the question propounded to us by Your Excellency should be answered in the affirmative.

Respectfully submitted,

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER