## In re ADVISORY OPINION TO THE GOVERNOR: PUBLIC DRINKING WATER PROTECTION ACT OF 1987.

### No. 88–365–M.P.

Supreme Court of Rhode Island.

April 7, 1989.

Peter Palombo, Jr., Palombo & Piccirilli, Cranston, Stephen J. Carlotti, Providence, James A. Jackson, Hinckley, Allen, Snyder & Comen, Providence, for plaintiff.

Peter J. McGinn, Penelope Warren Register, Tillinghast, Collins & Graham, Providence, for defendant.

His Excellency Edward D. DiPrete

Governor of the State of Rhode Island and Providence Plantations

The justices of this court are pleased to respond to your request for a written opinion concerning the validity of certain legislation enacted by the General Assembly at its January 1987 session. Your request was made pursuant to article 10, section 3, of the Rhode Island Constitution.

Your inquiry concerns the Rhode Island Water Resources Board (board) and its authority to issue bond notes having a value in excess of $50,000 without receiving approval by the electorate as required by article 6, section 16, of our state's constitution, which mandates a referendum whenever the state's faith and credit is being pledged.

During its January 1987 session, the General Assembly enacted chapter 15.3 of title 46, which is known as the Public Drinking Water Protection Act of 1987. P.L.1987, ch. 417, § 1. The express purpose of this legislation was the protection and restoration of the purity of drinking-water supplies in this state. The board has been designated to carry out the provisions of chapter 15.3 "in its capacity as designated in § 46–15.1–2."

Your Excellency's concern about the board's status was previously shared by Governor Frank Licht, who in 1970 asked the then justices of this court if the board could issue revenue bonds for water-supply purposes in sums in excess of $50,000 without a vote of the people. The justices responded to the Governor's request by pointing out that § 46–15.1–2, in its pertinent portion, states that in exercising its powers, "the board shall constitute a body politic and corporate and a public instrumentality of the state having a distinct legal existence from the state and not constituting a department of the state government * * *." *Opinion to the Governor*, 107 R.I. 651, 655, 270 A.2d 520, 522 (1970). Thus the justices noted that the General Assembly was careful to exclude the state indebtedness contemplated by the constitution, stating with clarity that any debt incurred by the board was the board's debt, not the state's debt. *Id.* Further proof of this relationship is to be found in § 46–15.1–13, which explicitly provides that the remedy for any creditor of the Water Resources Board is by way of a civil action against the board. 107 R.I. at 655, 270 A.2d at 522.

We now direct our attention to the Public Drinking Water Protection Act of 1987. Under its provisions each supplier of water is required to impose and collect a "water quality protection charge" on the sales of public drinking water at the rate of one cent per 100 gallons of water sold. Section 46–15.3–5(a). The suppliers must add this charge to the sale price and then remit to the board 90 percent of the charges collected. Sections 46–15.3–5(a) and 46–15.3–9. The suppliers may retain and disburse 10 percent of the charges collected for any purpose relating to their operations. Section 46–15.3–9. The board is obligated to maintain a "water quality protection fund" that will be the depository for the charges collected by the suppliers. Section 46–15.3–10. Even though the water suppliers are required to remit 90 percent of the collected charges to the board, § 46–15.3–9 dictates that the suppliers "shall use or pledge the ninety percent (90%) of the charges to pay principal or interest on bonds, notes, or other obligations issued for the purposes of this chapter * * *." It should be noted that the city of Providence,

acting through its water supply board, is required to impose and collect water-quality-protection charges on its sales of water. Unlike other suppliers, the city is not required to turn over any portion of the charges so collected to the state, § 45–15.3–9, but it is obligated by § 46–15.3–10 to create a water-quality-protection fund that will be administered by the Providence Water Supply Board.

Other potential sources of revenue for implementing the water quality protection act include funds that might be appropriated by the state or city of Providence, proceeds from the sale of bonds or notes, and any grants, bequests, donations, gifts, or fines assessed by the board. Section 46–15.3–10(a).

The advisory opinion given Governor Licht provides guidance as to our response to the inquiry made by Your Excellency. As noted earlier, § 46–15.3–2 specifically provides that the board, while acting in its capacity as designated by § 46–15.1–2, is the agency that will effectuate the provisions of chapter 15.3 of title 46. Section 46–15.1–2 served as the basis for the advice given Governor Licht. *Opinion to the Governor*, 107 R.I. at 655, 270 A.2d at 522. We would point out that the board's status has remained unchanged since chapter 15.1 became law in early May 1970.

We would emphasize that the vast majority of jurisdictions that have been confronted with the issue now before us have reached the same conclusion as the undersigned by relying, for the most part, on the so-called revenue-bond or special-fund doctrine, which holds that if a governmental "obligation is payable *solely* from revenues resulting from the project for which the obligation was incurred and not from taxes, a debt within the constitutional limitations is not incurred." *State ex. rel. Wyoming Farm Loan Board v. Herschler*, 622 P.2d 1378, 1387 (Wyo.1981).

In making to Your Excellency an affirmative response to the question posed, the members of this court express their appreciation for the assistance given by briefs submitted by counsel for the Governor and counsel for the Water Resources Board.

Respectfully Submitted,
THOMAS F. FAY
THOMAS F. KELLEHER
JOSEPH R. WEISBERGER
FLORENCE K. MURRAY
DONALD F. SHEA