In re ADVISORY OPINION TO THE GOVERNOR (DEPCO).

Jack KAYROUZ et al.

v.

RHODE ISLAND DEPOSITORS ECONOMIC PROTECTION CORP. By and Through its Chairman, Bruce SUNDLUN.

Nos. 91–198–M.P. and 91–217–Appeal.

Supreme Court of Rhode Island.

June 24, 1991.

Sheldon Whitehouse, Providence, for Governor.

Robin E. Feder, Asst. Atty. Gen., Julio C. Mazzoli, Sp. Asst. Atty. Gen., Providence, for amicus curiae, Dept. of Atty. Gen.

Philip W. Noel and Gary R. Pannone, McGovern Noel Falk Pannone Procaccini & O'Leary, Ltd., Providence, for amicus curiae, R.I. Central Credit Union.

Peter Lawson Kennedy and Paul V. Curcio, Adler, Pollock & Sheehan, Inc., Providence, for amicus curiae, Davisville Credit Union and Cent. Credit Union.

Everett A. Petronio, Johnston, for amicus curiae Columbian Credit Union.

Kevin A. McKenna, McKenna & Fallon, Providence, for plaintiffs Jack Kayrouz, et al.

OPINION

MURRAY, Justice.

This matter is before the Supreme Court pursuant to a formal request of the Governor of the State of Rhode Island for an advisory opinion under article 10, section 3, of the Rhode Island Constitution. On April 25, 1991, the Governor requested the opinion of this court on four questions of law regarding the constitutionality of the Rhode Island Depositors Economic Protection Act of 1991 (DEPCO act), P.L.1991, ch. 3, §§ 1–5. On May 2, 1991, a trial justice of the Providence County Superior Court certified four essentially similar questions to this court for determination pursuant to G.L.1956 (1985 Reenactment) § 9-24-27. These matters were consolidated, and on May 22, 1991, the court heard oral argument on them.[1] Following conference thereon, we issued an order wherein we announced our responses to the four questions propounded by the Governor. *In re Advisory Opinion to the Governor (DEPCO)*, No. 91–198–M.P. (R.I., filed May 28, 1991). That order was issued prior to the release of this opinion because of the need for an expeditious resolution of the matter.

 It is well settled that a legislative enactment is presumed to be constitutional and that a party challenging the legislation has the burden of persuading the court otherwise. *Brennan v. Kirby*, 529 A.2d 633, 639 (R.I.1987). The challenging party must convince the court beyond a reasonable doubt that the act is contrary to a provision either expressly stated in the State or the Federal Constitution or necessarily implied from language therein. *In re Advisory Opinion to the House of Representatives*, 485 A.2d 550, 552 (R.I.1984). If the act is susceptible of more than one construction, we shall adopt that construction that avoids unconstitutionality. *Id.*

As we stated in our earlier order, we find the DEPCO act constitutional. The act amends the receivership laws for banks and other financial institutions regulated by the Department of Business Regulation (DBR) by granting to depositors a priority in payment over other unsecured creditors upon the liquidation of such financial institutions. General Laws 1956 (1989 Reenactment) § 19-15-7, as amended by P.L. 1991, ch. 3, § 1. The act also creates the Depositors Economic Protection Corporation (corporation) to remedy the economic disaster arising from the failure of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC) and the subsequent banking crisis. General Laws 1956 (1988 Reenactment) § 42-116-4, as amended by P.L.1991, ch. 3, § 4. Thus it is a comprehensive plan enacted to deal with an overwhelming economic and human crisis.

I

Adequacy of the Act's
Legislative Majority

"Whether the purposes for which the Rhode Island General Assembly enacted the Depositors Economic Protection Act constitute public purposes, and not local or private purposes within the meaning of Article VI, Section 11 of the Rhode Island Constitution, thereby permitting the General Assembly constitutionally to have authorized by a simple majority the appropriations set forth in the Depositors Economic Protection Act?"

 "The assent of two-thirds of the members elected to each house of the general assembly shall be required to every bill appropriating the public money or property for local or private purposes." R.I. Const. art. 6, sec. 11. The DEPCO act was passed in both the House of Representatives and the Senate by a simple majority rather than by a two-thirds vote. Therefore, the issue presented is whether the purposes for which the General Assembly enacted the DEPCO act constitute public purposes and not local or private purposes.

1. We are responding to these consolidated matters in the form of an opinion; our findings shall therefore be legally binding.

The undisputed circumstances that prompted passage of the DEPCO act are set forth in the act as legislative findings:

"(1) Certain credit unions, loan and investment companies, banks and trust companies organized and existing under the laws of the state of Rhode Island whose deposits were previously insured by the Rhode Island Share and Deposit Indemnity Corporation, are presently unable to obtain adequate deposit insurance as required by section 19–11–9 of the general laws.

"(2) As a result thereof, a proclamation of the Governor dated January 1, 1991 declared a banking emergency under title 19, chapter 18 of the general laws with respect to certain of those institutions pursuant to which operations of such financial institutions have been suspended pending their obtaining adequate deposit insurance, and a number of them have obtained federal deposit insurance and have been permitted to resume operations.

"(3) There remain *more than twelve (12) such institutions* that remain subject to orders suspending their operations, which orders preclude approximately *190,000 members and/or depositors* of such institutions from having access to approximately *300,000 separate accounts* that in the aggregate total *more than one billion dollars.*

"(4) The inability of depositors in such remaining institutions to withdraw their deposits has created hardships not only for such depositors and their families but also for a broad sector of citizens and businesses in the state of Rhode Island that depend on payments from depositors for goods and services supplied to them.

"(5) It is hereby determined to be necessary in order to preserve and restore liquidity to the economy of the state, to protect deposits of state funds in such institutions, and to protect the health, safety and general welfare of the people of the state of Rhode Island, for the general assembly to exercise its constitutional and other powers to enact measures to achieve these essential public purposes by providing for the relief of persons affected by the suspension of withdrawals from the financial institutions affected by the banking emergency by expediting access by depositors to funds and assets in such institutions.

"(6) The numbers of people, accounts and funds adversely affected indicate that, without prompt state legislative action, there will be a serious negative impact on the health, safety and general welfare of the people of the state and the economy of the state, already weakened by current economic conditions.

"(7) *This act shall, therefore, be deemed to be an exercise of the police powers of this state to achieve the essential public purpose of providing for the protection of the health, safety and general welfare of the people of the state* by amending the general laws of Rhode Island to grant priorities in distributions to depositors upon the liquidation of financial institutions and to expedite receivership and other proceedings intended to make available to depositors and other affected parties funds and the value of assets in the affected financial institutions." (Emphasis added.) Section 19–15–6.

When we consider whether an act serves a public purpose, the self-serving recitation of a public purpose contained within the legislation is not conclusive. *Advisory Opinion to the Governor*, 113 R.I. 586, 593, 324 A.2d 641, 645–46 (1974). Nevertheless, the General Assembly is vested with wide discretion to determine the existence of a public purpose, and such a determination is entitled to great deference by the judiciary. *Id.* at 593, 324 A.2d at 646. "An act of the General Assembly mandates judicial approval if, on any reasonable view, the act is designed to protect the public health, safety and welfare." *Id.* at 594, 324 A.2d at 646.

In past cases we have analogized considerations of public purpose to those of public use. Public use is traditionally viewed as follows:

"[T]he prospective use of the property taken from private persons must provide the general public, or an appreciable por-

tion thereof, with the right to use or employ such property or at least have it used or employed by some agency, public or private in the public interest under appropriate regulations and restrictions in order to provide the public as such with some service deemed to be necessary to it or to a proper function of government." *Romeo v. Cranston Redevelopment Agency*, 105 R.I. 651, 658, 254 A.2d 426, 431 (1969).

The concept of public purpose, however, is not static but must be sufficiently flexible to meet the ever-changing needs of our complex society. *Advisory Opinion to the Governor*, 113 R.I. at 594, 324 A.2d at 646. The modern trend of authority is to expand and to construe liberally the meaning of public purpose, especially in the area of economic welfare. *Id.* at 595, 324 A.2d at 646–47. Although the failure of the more-than-twelve financial institutions did not create a state debt, it cannot be denied that the large number of depositors, the total number and aggregate value of the accounts involved, and the overall negative impact on the state's economy and the citizens' general welfare have created a public crisis. As stated by the General Assembly, this crisis has affected not only the depositors of those institutions but also their creditors and the people with whom they do business. Section 19–15–6(4). We would be hard pressed to imagine a scenario more deserving of public-purpose legislation.

We therefore hold that the DEPCO act serves a public purpose and that passage of the act by a simple majority was constitutional.

## II

### Validity of the Statutory Preferences and Priorities

"Whether the provisions of R.I. Gen. Laws § 19–15–7 and 42–116–7(b) through (e) as enacted on February 8, 1991 constitute a valid exercise by the legislature of the 'police powers' of the State of Rhode Island or whether such provisions constitute (i) a law impairing the obligation of contracts in violation of Article I, Section

10 of the Constitution of the United States or Article I, Section 12 of the Constitution of Rhode Island, (ii) a taking of private property for a public use without just compensation in violation of Amendment V of the Constitution of the United States or Article I, Section 16 of the constitution of Rhode Island or (iii) a denial to any person of equal protection of the laws under Amendment XIV, Section 1 of the Constitution of the United States or Article I, Section 2 of the Constitution of Rhode Island?"

Sections 19–15–7 and 42–116–7 of the DEPCO act set forth the priority of claims and the order of distribution as follows: (1) reasonable administrative expenses, (2) unsecured claims for wages, (3) unsecured claims of depositors up to an amount insurable under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811–1832 (1988), (4) unsecured claims of depositors that exceed the amounts recoverable under the Federal Deposit Insurance Act, (5) unsecured claims of any local, state, or federal taxing agency entitled to priority under law, and (6) unsecured claims of all general creditors and depositors to the extent not accorded priority above. We note at the outset that the state has broad police powers to pass legislation promoting the health, welfare, and safety of the people. *(Opinion to the Governor)*, 24 R.I. 603, 605, 54 A. 602, 603 (1902). As stated above, the broadest scope of that power in furtherance of a public purpose is in the area of economic welfare. *Advisory Opinion to the Governor*, 113 R.I. at 595, 324 A.2d at 646–47.

The first constitutional challenge under this question is whether the preferences and priorities set forth in the DEPCO act constitute a law impairing the obligation of contracts in violation of the State and the Federal Constitutions. U.S. Const. Art. I, sec. 10; R.I. Const. art. 1, sec. 12.

In *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the Supreme Court announced the following three-part test to determine whether legis-

lation unconstitutionally impairs the obligation of contracts. First, has the state law in fact substantially impaired a contractual relationship? *Id.* at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580. Second, if the law constitutes a substantial impairment, can the state show a legitimate public purpose behind the regulation, "such as the remedying of a broad and general social or economic problem"? *Id.* at 411–12, 103 S.Ct. at 704–05, 74 L.Ed.2d at 581. Third, is the legitimate public purpose sufficient to justify the impairment of the contractual rights? *Id.* at 412, 103 S.Ct. at 705, 74 L.Ed.2d at 581.

■ Under traditional receivership law, depositors and general creditors would share in any available assets on a pro rata basis. Under the DEPCO act depositors are paid in full before general creditors receive anything. Thus the general creditors' actual recovery may be substantially affected if the available assets are inadequate. We find, however, that this new priority does not impair the contractual relationship but affects only the timing of payment. *See In re Inland Dredging Corp.,* 61 F.2d 765, 766 (2d Cir.1932) (impairment clause allows changes in remedy but not in right), *cert. denied,* 288 U.S. 611, 53 S.Ct. 403, 77 L.Ed. 985 (1933). Furthermore, even if we were to find an impairment of the contractual relationship, that impairment would be sufficiently justified by the legitimate public purpose of returning funds to deposit creditors and eventually to the Rhode Island economy.

The second constitutional challenge is whether the statutory preferences and priorities constitute a taking of private property for public use without just compensation in violation of the State and the Federal Constitutions. U.S. Const. Amend. V; R.I. Const. art. 1, sec. 16.

■ It is well settled that interests in specific property created by mortgages, security interests, or liens may not be taken without just compensation. *United States v. Security Industrial Bank,* 459 U.S. 70, 75, 103 S.Ct. 407, 410–11, 74 L.Ed.2d 235, 240–41 (1982). Contract rights that do not create interests in specific property, how-

ever, remain subject to alteration by paramount federal or state powers exercised for public purposes. *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247, 1275–76 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). The private property at issue here is the pool of assets belonging to the failed financial institutions in receivership. Neither the depositors nor the general creditors have interests in any specific property of the institution; only their claims based on contractual or tort liability are affected.

■ The Supreme Court has identified three factors that determine whether there has been an unconstitutional taking: (1) the character of the governmental action, (2) the economic impact of the regulation on the claimant, and (3) the extent to which the regulation has interfered with distinct investment-backed expectations. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224–25, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166, 178–79 (1986). Applying these factors to the DEPCO act, we find as follows. First, no property has been physically invaded or appropriated for the government. The Supreme Court has stated that an unconstitutional taking may be found more readily when the property is physically invaded than "when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978). Second, the economic impact on creditors amounts to a mere adjustment of the timing of distribution with respect to the available assets. Third, general unsecured creditors by definition have no investment-backed expectations. Their interests are subject to such variables as changes in the law of receivership and insolvency of the institution.

Accordingly we conclude that the statutory priorities do not amount to an unconstitutional taking of private property.

■ The third constitutional challenge is whether the statutory preferences and priorities constitute a denial to any

person of the equal protection of the laws. U.S. Const. Amend. XIV, sec. 1; R.I. Const. art. 1, sec. 2. Although the state has wide discretion in enacting legislation, it must show that the legislation is rationally related to a legitimate state interest in order to overcome an equal-protection challenge. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17 (1976). The mere fact that the legislation could have been drawn more precisely will not invalidate the statute. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

■ As we have discussed above, the DEPCO act serves a legitimate state purpose: it alleviates the widespread economic hardship caused by the current banking emergency. Furthermore, the statutory priorities are rationally related to this purpose by providing an orderly mechanism for restoring funds to the state's wounded economy. The provisions allowing for the payment in full of smaller claims before larger ones are neither arbitrary nor capricious but serve to further the legitimate state interest. *See United Wire, Metal and Machine Health and Welfare Fund v. State Deposit Insurance Fund Corp.,* 307 Md. 148, 159–60, 512 A.2d 1047, 1053 (1986) (discussing rational relationship between reduction in number of accounts and reduction in costs of receivership).

## III

### Authority to Issue and Fund Bonds

#### A

"Whether the Rhode Island Depositors Economic Protection Corporation (the 'Corporation') may, without a vote of the people under Article VI, Section 16 of the Rhode Island Constitution and without violating Article VI, Sections 2 and 10 of the Rhode Island Constitution, issue its bonds and notes in excess of $50,000 pursuant to the Rhode Island Depositors Economic Protection Act, R.I. Gen. Laws § 42–116–1 *et seq.,* with the payment of principal and interest being paid and secured by the Special Revenue Fund created by R.I. Gen. Laws § 42–116–31 and funded by a portion of the sales tax established in R.I. Gen. Laws § 44–18–18 provided the Corporation issues its bonds and notes on the basis that deposit of such sales tax revenues in the Special Revenue Fund is subject to an annual appropriation being made by the General Assembly of such sales tax revenues to the Special Revenue Fund?"

■ The DEPCO act creates a special revenue fund to which a portion of the sales tax is dedicated to be used by the corporation to secure the payment of bonds and notes in excess of $50,000. Section 42–116–31. The Rhode Island Constitution provides:

"The general assembly shall have no powers, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars * * * nor shall it in any case, without such consent, pledge the faith of the state for the payment of the obligations of others." R.I. Const. art. 6, sec. 16.

We must determine, therefore, whether the bonds issued by the corporation constitute state debts.

Section 42–116–4(a) of the DEPCO act creates "a public corporation of the state, having a distinct legal existence from the state and not constituting a department of the state government, with such politic and corporate powers as set forth in this chapter." These powers include the power to borrow money, issue bonds, and pledge, assign, or create security interests in assets, revenues, and funds of the corporation. Section 42–116–5. Furthermore, § 42–116–17 states:

"Bonds issued by the corporation under the provisions of this chapter shall not be deemed to be a debt, obligation (moral or otherwise) or a pledge of the faith and credit of the state * * * but shall be payable solely from the reve-

nues, funds, assets and other property or any revenues or loans dedicated to corporate purposes of the corporation from which they are made payable pursuant to this chapter."

In *Opinion to the Governor*, 107 R.I. 651, 652, 270 A.2d 520, 520–21 (1970), we considered whether the Rhode Island Water Resources Board could issue bonds in excess of $50,000 without a vote of the people. The enabling legislation provided that the Water Resources Board "shall constitute a body politic and corporate and a public instrumentality of the state having a distinct legal existence from the state and not constituting a department of the state government." General Laws 1956 § 46–15.1–2, as enacted by P.L.1970, ch. 304, § 1. Persuaded by the stated legal status of the board, we concluded that any debtor obligation resulting from issuance of the bonds was exclusively that of the Water Resources Board and not of the state. 107 R.I. at 655–56, 270 A.2d at 522–23.

In our present case the DEPCO act expressly states that the debtor obligation resulting from issuance of the bonds is exclusively that of the corporation and not of the state. Furthermore, the language of § 42–116–4, the corporation's enabling act, is similar to the language of § 46–15.1–2, the Water Resources Board enabling act. We therefore find § 42–116–4 constitutional.

■ We further find that the dedication of 0.5 percent of the sales-tax revenue to the special-revenue fund applies to this year only and is not binding on future General Assemblies. Although § 42–116–31 states that this percentage "will be dedicated to the special revenue fund," using apparently mandatory language, this section must be read in pari materia with other sections of the DEPCO act. *Opinion to the Governor*, 112 R.I. 151, 157, 308 A.2d 809, 812 (1973). For example, § 42–116–21(a) provides:

"The corporation is authorized to accept such monies *as may be appropriated from time to time by the general assembly* for effectuating its corporate purposes including * * * the establishment of reserves or contingency funds to be available for the payment of the principal of and the interest on any bonds, notes, certificates or other obligations of the corporation." (Emphasis added.)

It is clear, therefore, that the General Assembly intended that the payment of the proceeds of the sales tax into the special-revenue fund would be subject to annual appropriation and that each succeeding General Assembly may renew this appropriation as it sees fit. We therefore find that § 42–116–31 does not violate R.I. Const. art. 6, secs. 2 and 10.

B

"Whether the purposes for which the General Assembly enacted the Rhode Island Depositors Economic Protection Act, R.I. Gen. Laws § 42–116–1 *et seq.*, constitute public purposes, and not local or private purposes, within the purview of Article VI, Section 11 of the Rhode Island Constitution thereby permitting the General Assembly to approve appropriations of sales tax revenues to the Special Revenue Fund created by R.I. Gen. Laws § 42–116–31 and authorizing the Governor on behalf of the State of Rhode Island to contract with the Corporation for the transfer of moneys from the Special Revenue Fund to the Corporation, such moneys from the Special Revenue Fund to be utilized to pay the debt service on obligations of the Corporation and otherwise effectuate the purposes of the Corporation?"

■ We have already provided a lengthy discussion of the public purposes served by the DEPCO act; therefore, we shall respond to this question by reference to our response under question 1.

IV

Role of the Director of Business Regulation in Receivership

A

"Whether Sections 19–15–1, 19–15–2, 19–15.1–4, and 19–15.1–5 of the General Laws of Rhode Island, authorizing the

appointment by the Superior Court of the Director of the Department of Business Regulation as the receiver for any financial institution subject to title 19 of the General Laws, violate the distribution of powers requirement of Article V of the Constitution of the State of Rhode Island?"

■ The Rhode Island Constitution's distribution of governmental powers grants specific powers to one governmental branch while prohibiting another branch from exercising that same power. *Creditors' Service Corp. v. Cummings*, 57 R.I. 291, 300, 190 A. 2, 8 (1937) (discussing constitutional distribution of powers). Sections 19–15–1 and 19–15.1–4 of the DEPCO act authorize the director of the DBR, an arm of the executive branch, to seek an appointment as receiver of any insolvent financial institution upon application to the Superior Court. Sections 19–15–2 and 19–15.1–5 delineate the powers of the receiver.

We do not find that these sections infringe upon the authority of the court in a receivership proceeding. "It is generally considered a matter for the discretion of the court imposing the receivership to decide who should be appointed as receiver * * * and to decide, once a receiver has been appointed, whether he should be removed." *Cavanagh v. Cavanagh,* 118 R.I. 608, 625, 375 A.2d 911, 919 (1977). We find that the language of §§ 19–15–1 and 19–15.1–4 is discretionary, permitting the court to appoint the director as receiver or to appoint another person if the court wishes to do so. Furthermore, the powers granted to the receiver are further restricted by being made "subject to such directions as may from time to time be prescribed by the court." Sections 19–15–2, 19–15.1–5(a). Thus, the Superior Court retains ultimate control and supervision of the receivership and is empowered to make discretionary decisions, including the initial decision to place an insolvent institution into receivership. We therefore hold that these sections, as well as § 19–15–8, do not violate the distribution-of-powers requirement.

B

"Whether Sections 19–15–1 and 19–15–2, or 19–15.1–4 and 19–15.1–5 of the General Laws of Rhode Island, permitting the appointment of the Director of the Department of Business Regulation as receiver for a particular financial institution subject to Title 19 of the General Laws, violate the procedural due process requirements of Article I, Section 2 of the Constitution of the State of Rhode Island and Amendments V and XIV of the Constitution of the United States, where the Director and/or the Department of Business Regulation are or may be defendants in lawsuits asserting claims of negligence on the part of the Director and/or the Department of Business Regulation in their examination, regulation and supervision of such financial institution?"

C

"Whether Sections 19–15–1, 19–15–2, or 19–15.1–4 and 19–15.1–5 of the General Laws of Rhode Island, permitting the concurrent appointment of the Director of the Department of Business Regulation as receiver for multiple financial institutions subject to Title 19 of the General Laws, create an apparent or actual conflict of interest on the part of the Director in violation of the procedural due process requirements of Article I, Section 2 of the Constitution of the State of Rhode Island or Amendments V and XIV of the Constitution of the United States, where each of the subject financial institutions has or may have monetary claims against the other arising out [of] depository and/or contractual arrangements?"

■ These two questions concern possible conflicts of interest arising when claims of a failed financial institution are brought against the director who is also acting as receiver or when the director as receiver is obliged to assert claims against other financial institutions in receivership. "Ordinarily, only a person who is without interest in a cause and who stands indifferent between the parties may be appointed a

receiver therein. Therefore, a party to the cause will not ordinarily be appointed receiver unless both parties consent or there are special circumstances present which make such an appointment clearly for the best interest of all concerned." 65 Am.Jur. 2d *Receivers* § 133 at 963 (1972).

It is evident from the language of the DEPCO act that the General Assembly intended that the director of the DBR should be appointed as receiver *unless* the court found that this appointment would not be in the best interests of the parties. We do not find that such an appointment will inevitably lead to disastrous results. In fact, we note the high improbability that conflict will arise from claims against the state and/or the DBR based on negligent supervision of the failed institutions. Nevertheless, any claims that do arise would be based on discretionary acts of the state and would therefore be barred by the doctrine of discretionary immunity. *See United States v. Gaubert*, 499 U.S. ——, ——, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335, 348 (1991) (discretionary acts include day-to-day management of banking affairs); *Catone v. Medberry*, 555 A.2d 328, 333 (R.I.1989). Furthermore, the Superior Court retains the authority to cure any actual conflicts by removing and replacing the director as receiver or by appointing a coreceiver to prosecute or to defend the claim. We therefore hold that the Superior Court may constitutionally appoint the director as receiver for the failed financial institutions without violating the procedural due-process requirements of the State and the Federal Constitutions.

For the foregoing reasons we are of the opinion that the DEPCO act is constitutional. The certified questions are answered in accordance with our determination.